FIGURE EIGHT BEACH HOMEOWNERS' ASSOCIATION, INC. v. RAYMOND CLIFTON PARKER

FIGURE EIGHT BEACH HOMEOWNERS' ASSOCIATION, INC. v. H. P. LAING AND WIFE, K. G. LAING

No. 825DC738

(Filed 7 June 1983)

**Deeds § 20— assessment covenants—definiteness—enforceability**
    Assessment covenants in a declaration of restrictive covenants recorded by a developer were sufficiently certain and definite to be enforceable in that they provided a standard against which to measure a property owner's liability for assessments and sufficiently described the properties and facilities to be maintained and improved with revenues from the assessments.

APPEAL by defendants from *Rice, Judge.* Judgment entered 10 March 1982 in District Court, NEW HANOVER County. Heard in the Court of Appeals 13 May 1983.

Plaintiff seeks payment of assessments which it alleges are owed to it by defendants, property owners on Figure Eight Island, New Hanover County. Plaintiff and both defendants filed motions for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure. The hearings on the motions in both cases were consolidated and held on 8 March 1982. At the hearing, both parties presented documents, affidavits, stipulations and exhibits which show the following:

Figure Eight Island is a coastal barrier island in New Hanover County. It is approximately two and one-half to three miles long. In the mid-1960's, Island Development Co. began resort

and residential development of Figure Eight Island. Sales of individual lots were subject to certain restrictive covenants recorded by the developer in the New Hanover County Registry.

In 1972, Island Development Co. conveyed all of its unsold land on Figure Eight Island to the Figure Eight Island Co. Figure Eight Island Co. also recorded certain restrictive covenants in the New Hanover County Registry as amendments to those originally recorded by Island Development Co. All conveyances by Figure Eight Island Co. were subject to the restrictions as amended.

In 1975, Figure Eight Island Co. filed for relief under the Bankruptcy Act. Pursuant to the order of the Bankruptcy Court of the Eastern District of North Carolina, the trustee in bankruptcy for Figure Eight Island Co. conveyed by deed and assignment to Continental Illinois Realty (hereinafter CIR) all development rights to Figure Eight Island. This conveyance included rights affecting lands already sold as well as those held by CIR by virtue of its purchase of them after foreclosure on the Deeds of Trust to land held by Figure Eight Island Co. At the time of the hearing on this matter, CIR was the owner/developer of Figure Eight Island.

Plaintiff, Figure Eight Beach Homeowners' Association, Inc. (hereinafter HOA), is a non-profit corporation formed under the laws of North Carolina and doing business in New Hanover County. Formed in 1966, the purposes of HOA are set forth below:

(a) To bring together property owners of that area of New Hanover County and Pender County, North Carolina, known as Figure "8" Beach.

(b) In furtherance of the purposes hereinabove act (sic) forth this corporation may engage in any lawful activity including, but not limited to operating parks and playgrounds, fire and police departments and contracts for services which might be from time to time deemed desirable by the Directors of this corporation.

The By-laws of HOA empowered its Board of Directors to set the amount of dues and assessments to be paid by its members. By the express terms of the restrictive covenants recorded in the New Hanover County Registry, purchasers of property on Figure Eight Island had to be approved as members of the HOA. By the

recording of the deed, purchasers agreed to be bound by the restrictions, the Charter, and the By-laws of the HOA.

From its creation in 1966 until 1975, HOA levied and collected assessments and dues from its members, the property owners on Figure Eight Island. Although never expressly authorized, this practice was condoned and acquiesced in by the property owners and developers. In its amendments to the original Declaration of Restrictive Covenants, Figure Eight Island Co. contemplated that the HOA might be assigned the right to levy and collect the assessments.

After its acquisition of property and development rights in 1975, CIR, a California based real estate investment trust, hired Figure Eight Development, Inc., to manage the development on Figure Eight Island. At the same time, CIR orally assigned to HOA the right to levy and collect assessments from property owners. A written assignment to the same effect was executed in 1977 by Figure Eight Island Co. In its Declaration of Restrictive Covenants, recorded in the New Hanover County Registry in 1978, the HOA was designated as the party responsible for the levying, collection, and expenditure of assessments. In May and June 1979, both CIR and Figure Eight Development, Inc. assigned in writing to HOA the rights to levy, collect, and expend annual and special assessments.

These last assignments were executed in apparent response to an unpublished decision of this Court which held that plaintiff HOA had to prove the assignment to it of those rights before the trial court could find, on plaintiff's motion for summary judgment, that defendants-property owners were liable to plaintiff for such assessments. That case, in addition to involving this plaintiff, also involved defendants Laing. In a later case involving the same parties and issue, also unpublished, plaintiff HOA submitted the above-mentioned written assignments in support of its motion for summary judgment and this Court upheld the trial court's grant of that motion.

Defendants here own three properties on Figure Eight Island. Defendants Laing acquired their lot in 1976 and defendant Parker acquired his lots in 1972. The deeds in both conveyances contained the following language:

SUBJECT to all terms and conditions contained in the restrictive covenants recorded by the Figure Eight Island Company in Book 933, at Page 286 of the New Hanover County Registry, reference to which . . . is hereby made.

Those portions of the restrictive covenants recorded by Figure Eight Island Co. that are pertinent here are set out below:

2. *Applicability:* These Restrictions shall apply to all residential lots sold by the Company after the date hereof.

3. *Reservations:* The Company reserves the right absolutely to change, alter or redesignate the allocated, planned, platted or recorded use or designation of any property (so long as the Company retains title to said property) on any of the lands known as Figure Eight Island including, but not limited to, the right to change, alter or redesignate lands for condominium or single-family residential use, to change, alter or redesignate roads, utility and drainage facilities, and to change, alter or redesignate such other present and proposed amenities or facilities as may, in the sole judgment of the Company, be necessary or desirable.

. . .

8. *Assessments:* (a) The owner of each residential lot shall, by the acceptance of a deed or other conveyance for such lot, be deemed obligated to pay to the Company an annual assessment or charge to be fixed, established and collected on a lot by lot basis as hereinafter provided. Said annual assessment or charge shall be due on January 1 of the year for which it is assessed, provided that the Company may make provision for payment thereof in installments. Each annual assessment or charge (or installment thereof) shall, when due, become a lien against the lot against which such assessment or charge is made. Upon demand, the Company shall furnish to any owner or mortgagee a certificate showing the assessments or charges, or installments thereof, due as of any given date. Each lot subject to these restrictions is hereby made subject to a continuing lien to secure the payment of each assessment or charge (or installment thereof) when due.

(b) Such assessment or charge shall be in an amount to be fixed from year to year by the Company, which may establish different rates from year to year as it may deem necessary and may establish different rates for various general classifications of lots according to the use or location of said lots. The Company may levy additional assessments if necessary to meet the needs of the entire Island or portion thereof.

(c) The funds arising from said assessment or charge or additional assessment may be used for any or all of the following purposes: Maintaining, operating and improving the bridges; protection of the property from erosion; collecting and disposing of garbage, ashes, rubbish and the like; maintenance and improvement of the streets, roads, drives, rights of way, community land and facilities, tennis courts, marsh and waterways; employing watchmen; enforcing these restrictions; and, in addition, doing any other things necessary or desirable in the opinion of the Company to keep the property in neat and good order and to provide for the health, welfare and safety of owners and residents of Figure Eight Island.

(d) Upon the failure of the owner of any lot to pay any such assessment or charge, additional assessment, or installment thereof when due, the Company shall have the right to collect the amount thereof by an action at law against the owners as for a debt, and may bring and maintain such other suits and proceedings at law or at equity as may be available. Such rights and powers shall continue in the Company and the lien of such charge shall be deemed to run with the land and the successive owners of each lot, by the acceptance of deeds therefor, shall be deemed personally to assume and agree to pay all unpaid assessments or charges or additional assessments which have been previously levied against the property, and all assessments or charges or additional assessments as shall become a lien thereon during their ownership. Unpaid assessments or charges, additional assessments, or installments thereof, shall bear interest at six percent (6%) from the due date thereof, until paid.

(e) The monies collected by virtue of the assessments or charges or additional assessments, of the lien provided by

this section, shall be paid to the Company to be used in such manner and to the extent as the Company may determine, in accordance with paragraph 8(c) hereof, for the benefit of the residents of Figure Eight Island. The judgment of the Company in the making of assessments or charges or additional assessments and the expenditure of funds shall be final.

(f) The Company shall not be obligated to spend in any one calendar year all of the sums collected during said year by way of assessments or charges or additional assessments and may carry forward to surplus any balance remaining. The Company shall not be obliged to apply any such surplus to the reduction of charges in the succeeding year.

(g) The Company shall have authority, in its discretion, to borrow money to expend for the purposes set forth in paragraph 8(c) hereof upon such terms and security and for such periods as it may determine, and to repay said borrowings and the interest thereon from the assessments or charges or additional assessments provided for in this paragraph 8.

(h) It is contemplated that the Company may, in its discretion, assign to the Figure Eight Island Homeowners' Association, its successors or assigns, the right to make and collect assessments, to expend such funds as may be collected, and to otherwise be substituted for the Company under this paragraph.

. . .

21. *Modifications:* The Company specifically reserves the right to amend or change any part or all of the restrictions, covenants and conditions herein set out by the filing in the office of the Register of Deeds of New Hanover County and/or Pender County a declaration of amended restrictive covenants, which such amendments, modifications or additions to the restrictive covenants contained in this Declaration shall be made applicable to the conveyance of lots made subsequent to the recording of such declaration of amended restrictive covenants.

. . .

24. *Miscellaneous:*

. . .

(d) In all cases the restrictions set forth or provided for in these restrictions shall be construed together and shall be given that interpretation or construction which will best tend toward their strict enforcement, and, if necessary, they shall be so extended or enlarged by implication as to make them fully effective.

The pertinent portions of the Declarations of Restrictive Covenants recorded by CIR in 1978 contained essentially the same wording as those set out above with the exception of paragraph 8(c), which is set out below with differences underscored:

8. *Assessments*

. . .

(c) The funds arising from said assessment or charge or additional assessment may be used for any or all of the following purposes: Maintaining, operating, improving and re-placing the bridges; protection of the property from erosion; collecting and disposing of garbage, ashes, rubbish and the like; maintenance, improvement and lighting of the streets, roads, drives, rights of way, community land and facilities, tennis courts, marsh and waterways; employing watchmen; enforcing these restrictions; paying taxes, indebtedness of the Association, insurance premiums, governmental charges of all kinds and descriptions and, in addition, doing any other things necessary or desirable in the opinion of the Association to keep the property in neat and good order and to provide for the health, welfare and safety of owners and residents of Figure Eight Island.

In 1979, plaintiff HOA assessed property owners on Figure Eight Island an annual assessment of $382.00 for residences and $255.00 for lots. A special assessment of $275.00 per lot was levied for the purpose of financing the construction of a new bridge to the island. The bridge to be replaced constituted the only land based transportation access to the island.

In the complaints that initiated the legal proceedings in this matter, plaintiff alleged that defendant Parker had refused to pay $500.00 of the special assessment and that defendants Laing had refused to pay any of the special assessment or the annual assessment of $255.00 on their lot.

On 10 March 1982, the trial court granted plaintiff's motion for summary judgment and denied defendants' motion for summary judgment. The court ordered defendants to pay the amounts owing under their respective assessments and the costs of the action. From this Order, defendants appealed.

*Hogue, Hill, Jones, Nash, Lynch, by William L. Hill, II, for plaintiff-appellee.*

*Harold P. Laing for defendants-appellants.*

HILL, Judge.

Defendants' sole exception is to the entry of judgment by the trial court in this matter. Defendants assign as error the trial court's granting of plaintiff's motion for summary judgment and denial of defendants' motion for summary judgment. On appeal defendants advance three questions:

I. Is restrictive covenant number 8 of the Declaration of Restrictive Covenants for Figure Eight Island Company unenforceable due to its vagueness, uncertainty, and failure to state an ascertainable standard?

II. Are the restrictive covenants upon which the plaintiff-appellee relies enforceable only by the original grantor?

III. Are the covenants upon which the plaintiff-appellee relies unenforceable as against public policy?

As plaintiff points out in his brief, only the first of these questions was the issue before the trial court. The scope of our consideration is therefore properly limited only to the first question. *Hall v. Hall*, 35 N.C. App. 664, 242 S.E. 2d 170, *disc. rev. denied*, 295 N.C. 260, 245 S.E. 2d 777 (1978). We have nevertheless considered the other questions presented by defendants' appeal and the arguments offered in support thereof. We find defend-

ants' contentions with respect to these questions to be without substantial merit.

The sole question remaining for our consideration is whether the trial court acted properly in granting plaintiff's motion for summary judgment and denying defendants' motion for summary judgment. Defendants contend that paragraph 8 of the Declaration of Restrictive Covenants recorded by the Figure Eight Island Co. is vague and uncertain and therefore unenforceable. For this reason, defendants argue, the trial judge's grant of summary judgment for plaintiff was improper.

The law in North Carolina is that on a motion for summary judgment under Rule 56, N.C. Rules of Civil Procedure, the test to be applied by the trial court is whether, on the basis of the materials submitted by the parties supporting and opposing the motion, there is any genuine issue as to any material fact. *Caldwell v. Deese,* 288 N.C. 375, 218 S.E. 2d 379 (1975). If no such issue exists, the remaining question for the court's determination is whether the moving party is entitled to judgment as a matter of law. *In re Will of Edgerton,* 29 N.C. App. 60, 223 S.E. 2d 524, *cert. denied,* 290 N.C. 308, 225 S.E. 2d 832 (1976).

In support of their argument, defendants cite us to the cases of *Beech Mountain Property Owner's Association v. Seifart,* 48 N.C. App. 286, 269 S.E. 2d 178 (1980), and *Snug Harbor Property Owners Association v. Curran,* 55 N.C. App. 199, 284 S.E. 2d 752 (1981), *disc. rev. denied,* 305 N.C. 302, 291 S.E. 2d 151 (1982), for the following proposition recited in defendants' brief:

Assessments based on restrictive covenants lacking some ascertainable standard by which a court can objectively determine both the amount of the assessment and the purpose for which it is levied are void and unenforceable.

Defendants overread both cases.

*Beech Mountain, supra,* considered for the first time in this jurisdiction the matter of restrictive covenants which imposed affirmative obligations on the grantee of a deed. These affirmative obligations consisted on monetary assessments. In *Beech Mountain,* this Court upheld the trial court's grant of summary judgment for defendants-property owners. Speaking through Judge Parker, the Court said:

[J]ust as covenants restricting the use of property are to be strictly construed against limitations on use, [citation,] and will not be enforced unless clear and unambiguous, [citation,] even more so should covenants purporting to impose affirmative obligations on the grantee be strictly construed and not enforced unless the obligation be imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application.

*Id.* at 295, 269 S.E. 2d at 183. The Court in *Beech Mountain* noted with approval the decisions of other jurisdictions which "stressed the necessity for some ascertainable standard contained in the covenant by which the court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant." *Id.* The Court adopted this view and held that in order for assessments to be imposed on the basis of restrictive covenants there must appear a "sufficient standard by which to measure the [property owners'] liability for assessments." *Id.* The Court also required that covenants must identify with particularity the property to be maintained and must provide some guidance to a reviewing court as to which facilities and properties the property owners' association or other similar body chooses to maintain. *Id.* at 295-96, 269 S.E. 2d at 183-84, *Snug Harbor Property Owners Association v. Curran, supra,* at 204, 284 S.E. 2d 752 at 755.

In *Snug Harbor,* this Court considered a fact situation very similar to that in *Beech Mountain,* but did so in the context of defendants-property owners' motion under Rule 12(b)(6), N.C. Rules of Civil Procedure, to dismiss plaintiff-property owners' association's complaint for failure to state a claim for relief. In affirming the trial court's grant of that motion, *Snug Harbor* relied heavily on *Beech Mountain* in finding the restrictive covenants involved unenforceably vague.

The Courts in *Beech Mountain* and *Snug Harbor* concluded that the covenants in each case failed to meet the three-pronged requirement set forth in *Beech Mountain* and found them unenforceable. Nowhere in either opinion, however, does the Court require, as defendants apparently contend, that the restrictive covenants must provide the reviewing court with a standard by which it can objectively determine the *amount* of the assessment.

Considering the matter before us in light of the established requirements, we find that paragraph 8 of the Declaration of Restrictive Covenants is not unenforceably vague. We note first that paragraph 24(d), set forth above, requires that the restrictions in the Declaration be construed together. Bearing this in mind, any reading of the language of paragraph 8(c) would provide a standard against which to measure the property owner's liability. Particularly when read with those portions of the Declaration relating to appearance and maintenance, paragraph 8(c) is sufficiently definite in its terms that the purpose and amount of the annual and special assessments in question clearly "fall within the contemplation of the covenant."

Secondly, we find that the property to be maintained is described with particularity. Having reference to the Declaration of Restrictive Covenants recorded by the developer and its predecessors in title in the New Hanover County Registry, and a map of the entire island showing roads, lots, facilities, bridge, causeway, natural and man-made channels and peninsulas, we can perceive no construction of paragraph 8 of the Declaration of Restrictive Covenants that would support any conclusion other than that reached by the trial court. Further, other than simply asserting that the property to be maintained is not sufficiently described, defendants advance no argument to support them in this regard.

Lastly, we find that there is no question as to which properties and facilities the HOA seeks to maintain with the contested assessments. Contrary to the situation in *Beech Mountain*, defendants here were aware, by reference in the deed to maps and Restrictive Covenants, what properties and facilities were to be maintained and improved with the revenues from the assessments. There are no after-acquired properties or facilities other than those specified or referred to in the Declaration of Restrictive Covenants of the development maps for the maintenance or improvement of which the assessments were made. Consequently, we find the covenants sufficient to guide the trial court in its review of the determination made by plaintiff HOA.

Our careful review of the record on appeal and consideration of the arguments advanced by defendants in their brief fail to persuade us that there is any genuine issue of material fact. The

trial court's judgment granting plaintiff's motion for summary judgment was therefore proper. In affirming the grant of plaintiff's summary judgment motion, we necessarily conclude that defendants' motion for summary judgment was properly denied.

The trial court's judgment granting plaintiff's motion for summary judgment and denying defendants' motion for summary judgment is therefore affirmed.

Affirmed.

Judges JOHNSON and PHILLIPS concur.