RAYMOND CLIFTON PARKER, Plaintiff v. FIGURE "8" BEACH HOMEOWNERS' ASSOCIATION, INC., and THE COUNTY OF NEW HANOVER, Defendants

No. COA04-661

(Filed 3 May 2005)

### 1. Deeds— restrictive covenants—assessment for dredging waterway

The trial court did not err by granting defendants' motion for summary judgment in an action by a member of a coastal homeowner's association challenging the association's authority to levy a special assessment for dredging and maintaining a waterway. The standards for interpreting covenants imposing affirmative obligations include the identification of the property to be maintained with particularity and the existence of sufficient standards by which to measure liability for assessments. The language involved here clearly provides that assessments may be used for channel dredging, maintenance of marshes and waterways, and payment of governmental charges, and the covenants included maps. The court reasonably construed the covenants to include an area not covered by the maps and not adjacent to the island because it directly affects the island's boating community. Additionally, the members who voted were informed of the location of the area to be maintained, the cost, and the duration of the commitment.

### 2. Appeal and Error— failure to pursue remedy at trial—not heard on appeal

Plaintiff could not pursue on appeal the issue of access to ballots in a homeowner's association assessment election where he was granted bifurcated access to protect the secrecy of the vote, he agreed to review the ballots at a break on the assumption that he could raise the issue again, and he did neither.

Appeal by plaintiff from judgment entered 16 May 2003 by Judge Kenneth F. Crow in the Superior Court in New Hanover County. Heard in the Court of Appeals 15 February 2005.

*Johnson & Johnson, P.A., by Rebecca J. Davidson, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Stuart L. Egerton, for defendant-appellee Figure "8" Beach Homeowners' Association, Inc.*

*E. Holt Moore, III, for defendant-appellee New Hanover County.*

HUDSON, Judge.

This case concerns a dispute between a coastal homeowner's association and one of its members about the association's authority to levy a special assessment for dredging and maintenance of a waterway. On 21 February 2002, plaintiff Raymond Clifton Parker sued for judgment declaring that a vote on the assessment, the assessment itself, and a contract between defendant New Hanover County ("the county") and defendant Figure "8" Beach Homeowners' Association, Inc. ("HOA") were *ultra vires*, inappropriately obtained, and null and void. Both defendants moved for summary judgment, and by consent of all parties, plaintiff was deemed to have moved for summary judgment. The court denied plaintiff's motion and granted defendants' motions by order entered 16 May 2003. Plaintiff appeals. We affirm.

Plaintiff owns property on Figure 8 Island ("Figure 8"), a privately owned island of 563 lots in New Hanover County. Mason Inlet runs along the south end of the island, separating it from the Town of Wrightsville Beach. Figure 8 is governed pursuant to the HOA bylaws and applicable restrictive covenants. Figure 8 property owners, including plaintiff, are members of the HOA. On 29 January 1993, the covenants were amended to add "channel dredging; beach renourishment" as purposes for which annual assessments could be used. Until 12 April 1993, there were three versions of restrictive covenants on Figure 8 lots, based on their date of sale. On 12 April 1993, the HOA made the 1978 version of the restrictive covenant applicable to all lots. This covenant obligates property owners to pay an annual assessment in an amount fixed by the HOA board, which can also levy additional assessments as it deems necessary. Any assessment for new capital improvements costing more than $60,000 requires approval by a majority of HOA members eligible to vote.

In 1999, the county, the HOA, and several other homeowner associations in the Wrightsville Beach area had been considering measures to deal with erosion, channel dredging and other beach-related maintenance matters. The homeowner associations formed a coalition called the Mason Inlet Preservation Group ("MIPG"), which undertook a project to relocate Mason Inlet. The sand dredged from the project would be used to renourish Figure 8's beaches. The

county commissioners voted to sponsor the project and pay for it through a special assessment on the property owners of Wrightsville Beach and Figure 8. Over the next two years, the project moved through the permitting and planning process, and in November 2001, the county obtained from the U.S. Army Corps of Engineers a permit to relocate Mason Inlet. The permit required that the county maintain the relocated inlet for thirty years through regular dredging. On 5 November 2001, the county commission voted 3-2 against the project based on concerns about the cost of maintaining the relocated inlet.

The Figure 8 HOA board quickly developed a plan to seek reversal of the commissioners' vote. Having determined that the costly maintenance was a capital improvement, the board approved immediate solicitation of a vote by HOA members to approve a special assessment covering the maintenance costs of the relocated inlet. On 14 November 2001, the board mailed letters and ballots to all eligible HOA voters. A majority of the ballots returned voted in favor of the special assessment associated with the project.

[1] Plaintiff first argues that the court erred in denying plaintiff's motion for summary judgment and in allowing defendants' motion for summary judgment. We disagree.

"The test to be applied by the trial court in ruling on a motion for summary judgment [is] whether the pleadings, depositions, answers to interrogatories, admissions of file or affidavits established a genuine issue as to any material fact." *McGinnis Point Owners Ass'n v. Joyner*, 135 N.C. App. 752, 754, 522 S.E.2d 317, 319 (1999) (citing N.C.R. Civ. P. 56(c)). "If no such issue exists, the trial court must then determine whether the moving party is entitled to judgment as a matter of law." *Id.* This Court has set forth the following standard for interpreting covenants imposing affirmative obligations:

> Covenants that impose affirmative obligations on property owners are strictly construed and unenforceable unless the obligations are imposed in clear and unambiguous language that is sufficiently definite to assist courts in its application. To be enforceable, such covenants must contain some ascertainable standard by which a court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant. Assessment provisions in restrictive covenants (1) must contain

a sufficient standard by which to measure . . . liability for assessments, . . . (2) must identify with particularity the property to be maintained, and (3) must provide guidance to a reviewing court as to which facilities and properties the . . . association . . . chooses to maintain.

*Allen v. Sea Gate Assn.*, 119 N.C. App. 761, 764, 460 S.E.2d 197, 199 (1995) (internal quotation marks omitted) (citing *Figure Eight Beach Homeowners' Ass'n, Inc. v. Parker and Laing*, 62 N.C. App. 367, 376, 303 S.E.2d 336, 341 (1983) and *Beech Mountain Property Owners Assoc. v. Seifart*, 48 N.C. App. 286, 295-96, 269 S.E.2d 178, 183-84 (1980), *disc. review denied*, 309 N.C. 320, 307 S.E.2d 170 (1983)).

We first consider whether the covenants "contain a sufficient standard by which to measure" the HOA's liability for assessments, and whether the covenants "identify with particularity the property to be maintained," and provide us guidance as to which facilities and properties are to be maintained. Regarding annual assessments, the covenant provides:

> 8(c) The funds arising from such assessment or charges or additional assessment may be used for any or all of the following purposes: Maintaining, operating, improving or replacing the bridges; protection of the property from erosion; collecting and disposing of garbage, ashes, rubbish and the like; *maintenance, improvement* and lighting *of* the streets, roads, drives, rights of way, community land and facilities, tennis courts, *marsh and waterways*; employing watchmen; enforcing these restrictions; paying taxes, indebtedness to the Association, insurance premiums, *governmental charges of all kinds and descriptions* and, in addition, doing any other things necessary or desirable in the opinion of the Association to keep the property in neat and good order and to provide for the health, welfare and safety of owners and residents of Figure Eight Island.

(Emphasis supplied). The 29 January 1993 amendment added the language "channel dredging; beach renourishment" to paragraph 8(c). Taken together, the language of this paragraph provides for assessments to be used for channel dredging and maintenance of marshes and waterways and for payment of governmental charges of all kinds and descriptions. Maps included in the covenants depict and refer to several of the areas which the assessment would be used to dredge and maintain.

One area covered by the assessment which is not immediately adjacent to Figure 8, and thus not depicted in the maps, is that where the to-be-opened Mason Creek would flow into the Atlantic Intracoastal Waterway ("AIW"). This area was of concern to the Army Corp of Engineers and the HOA because the planned relocation of Mason Inlet and the reopening of Mason Creek could create problems with sand build up at this juncture with the AIW. Plaintiff contends that because this area is neither named nor depicted in the covenants, it is not specifically identified and could not have been intended for inclusion in the covenants' maintenance provisions. Our courts have stated that "[r]estrictive covenants are strictly construed, but they should not be construed 'in an unreasonable manner or a manner that defeats the plain and obvious purpose of the covenant.' " *Hultquist v. Morrow*, 169 N.C. App. 579, 582, —— S.E.2d ——, —— (2005) (quoting *Cumberland Homes, Inc. v. Carolina Lakes Prop. Owners' Ass'n*, 158 N.C. App. 518, 521, 581 S.E.2d 94, 97 (2003)).

Concerning this location the trial court noted in finding 14:

14. Figure Eight Island has a boating community, with a marina near its main clubhouse and with several private docks on the back, or "sound side," of the island. Boating access to the AIW has been enhanced for residents on the southern back side of the island with the dredging and reopening of Mason's Creek, and the entire island's boating community is benefitted by once again having a navigable inlet on the southern end to the Atlantic Ocean. Periodic dredging of shoaling sands within the intersection of Mason's Creek and the AIW, occurring at a location some 4,500 feet from the southern end of the island proper, nevertheless directly benefits the navigability of channels for the Figure Eight Island boating community and the boaters' access to Mason Inlet, Wrightsville Beach and points both south and north on the AIW.

This finding is supported by the exhibits before the trial court, such as the aerial photo of the island and the environmental assessment report created by the U.S. Army Corp. of Engineers. As several aspects of the overall Mason Inlet relocation plan would have an impact on the confluence of AIW and Mason Creek, we believe that the court's construction of the covenants was reasonable and that the evidence adequately supports this finding, which in turn supports the legal conclusion that the "authority of the Figure 8 HOA to assess its property owners/members upon a vote of the membership is lawfully authorized."

In addition, the HOA ballot clearly specified the possible cost involved and the period of time dredging maintenance could be required. The ballot states, in pertinent part:

> The Board of Directors of the Figure "8" Beach Homeowners' Association, Inc. proposes a Special Assessment to be submitted to a vote of the members. The Assessment is for the purpose of funding the costs of maintenance dredging of the Atlantic Intracoastal Waterway (AIW) in the vicinity of the confluence of the AIW and Mason Creek, but only at times when maintenance of this area is required to be done by New Hanover County as a condition of federal or state permits authorizing the relocation of Mason Inlet. The assessment is not to be used when dredging of this area is being done in connection with the Mason Inlet Relocation Project by New Hanover County. The assessment will not be levied if the Mason Inlet Relocation Project is not constructed by July 1, 2003. The Board is authorized to assess up to $350,000 in any year. The assessment may be levied at such times and in such amounts as the Board deems appropriate for up to thirty years from the date of approval.

HOA members who voted were informed of the location of the area to be maintained as well as the cost involved and the duration of the commitment upon which they were voting.

[2] Plaintiff also argues that rulings at the hearing and in settling the record prejudiced plaintiff in his appeal. We disagree.

Plaintiff contends that he was prejudiced by his inability to review the actual ballots submitted by HOA members during the vote on the special assessment. Plaintiff alleged that some of the signatures on ballots might be fraudulent. However, the transcript of the hearing on the parties' summary judgment motions reveals that plaintiff was not denied such access. Defendants' counsel stated:

> We are not wanting to deny access to the entire ballots to Mr. Parker and his attorney. We simply want to maintain the secrecy of how the members voted and we've offered some means by which—I've already folded 55 no votes where we could first let them count the no votes without seeing the names, the names are folded under. Mr. Parker's name is among these. We could also allow them to inspect the ballots which were determined to be invalid. Most of them simply weren't marked. People signed their names and then forgot to vote on the top half of the page.

The trial court then undertook an *in camera* inspection of the ballots to look for signs of tampering. After this inspection, the court told plaintiff he could examine the ballots in a bifurcated process in order to preserve the secrecy of HOA members' votes. Plaintiff could see all of the signatures first, then could see the portion of the ballots indicating the vote cast. Plaintiff's counsel objected to this process, stating that he believed there was no expectation of privacy regarding the ballots, but then stated:

> I will review the ballots at a break and . . . . And then we'll move forward. And I assume that at some point in time, if I feel like we need to open this issue up, we can do it.

Plaintiff's counsel never raised the issue again. Having failed even to avail himself of the opportunity to review the ballots as described at the hearing and to raise this issue further with the trial court, plaintiff may not now complain that the access he was granted was insufficient and unduly prejudicial to him.

Affirmed.

Judges TIMMONS-GOODSON and STEELMAN concur.