SOUTHEASTERN JURISDICTIONAL ADMIN. COUNCIL, INC. v. EMERSON

[188 N.C. App. 93 (2008)]

SOUTHEASTERN JURISDICTIONAL ADMINISTRATIVE COUNCIL, INCORPORATED, Plaintiff v. GORDON W. EMERSON, DIANE R. EMERSON, PAUL D. HUFFMAN, DONALD N. PATTEN and VIRGINIA B. PATTEN, Defendants

No. COA06-1564

(Filed 15 January 2008)

**1. Deeds— restrictive covenants—service fees—authority not inferred**

The trial court erred by granting summary judgment for plaintiff developer in an action to collect service charges for a real estate development. The covenants in the deeds of defendants Huffman and Emerson do not explicitly authorize assessments and such power cannot be inferred from the ability to set rules and regulations, which was established in the deeds.

**2. Deeds— restrictive covenants—service fees—covenants not sufficiently definite**

The trial court erred by granting summary judgment to plaintiff developer in an action to collect service charges where the deed covenants in question did not give sufficient information to determine the amount of the assessment, did not describe with particularity the property to be maintained, and did not give guidance as to the facilities actually maintained.

**3. Real Estate— slander of title—no forecast of malice**

The trial court correctly dismissed a counterclaim for slander of title involving disputed real estate service charges where the counterclaim did not allege or forecast any element of malice, an essential element.

**4. Civil Procedure— summary judgment order—recitation of facts**

The trial court did not err by including certain facts in an order granting summary judgment where the facts were not findings, which would indicate that summary judgment was improper, but instead were recitations of undisputed facts.

Judge HUNTER dissenting in part.

Appeal by defendants from judgment entered 6 June 2006 by Judge W. Erwin Spainhour in Haywood County Superior Court. Heard in the Court of Appeals 21 August 2007.

*Adams Hendon Carson Crow & Saenger, P.A., by George Ward Hendon and Matthew S. Roberson, for plaintiff-appellee.*

*Brown, Ward and Haynes, PA, by Frank G. Queen, for defendant-appellants Gordon W. Emerson, Diane R. Emerson, and Paul D. Huffman; Brown & Patten, PA, by Donald N. Patten, for defendant-appellants, pro se and Virginia B. Patten.*

BRYANT, Judge.

Gordon W. Emerson, Diane R. Emerson, Paul D. Huffman, Donald N. Patten, and Virginia B. Patten (collectively, "defendants") appeal from an order granting summary judgment to Southeastern Jurisdictional Administrative Council, Incorporated ("plaintiff"). For the reasons stated herein, we affirm in part and reverse in part.

## Facts

Plaintiff is an organization that owns and develops land in Haywood County, including the Lake Junaluska development. Defendants are purchasers of lots within that development. Plaintiff commenced this action to recover certain service charges from defendants.

Defendant Huffman purchased lots in 1970 and 1974; defendants Emerson purchased lots in 1992; and defendants Patten purchased a lot in 1996. Each defendant's deed contained restrictive covenants, some of which themselves assessed or granted plaintiff the right to assess certain service charges in the future. When defendants refused to pay the relevant assessments, plaintiff brought suit. At the trial level, plaintiff moved for and was granted summary judgment. Defendants appeal.

## Standard of Review

Because defendants appeal from an order granting summary judgment, we review each defendant's arguments pursuant to the same standard: *de novo. Howerton v. Arai Helmet, Ltd.,* 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004). The central issue is whether the trial court correctly concluded that there was no genuine issue as to any material fact and that the prevailing party was entitled to a judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (2005).

## I. Service Charges

Each defendant argues the trial court erred in granting summary judgment for plaintiff on its claim for "service charges," but because

the restrictive covenants authorizing those charges differ, their arguments also differ. Thus, we address them separately.

## A. Defendants Emerson and Huffman

[1] The relevant covenants in Huffman's and the Emersons' deeds are virtually identical:

> Second: That said lands shall be held, owned, and occupied subject to the provisions of the charter of the Grantor, and all amendments thereto, heretofore or hereafter enacted, and to the bylaws and regulations, ordinances and community rules which have been, or hereafter may be, from time to time, adopted by Grantor, and its successors.

> Fifth: That it is expressly stipulated and covenanted between the Grantor and the Grantee, his heirs and assigns, that the bylaws, regulations, community rules and ordinances heretofore or hereafter adopted by the Grantor shall be binding upon all owners and occupants of said lands as fully and to the same extent as if the same were fully set forth in this deed, and that all owners and occupants of said lands and premises shall be bound hereby.

The following is a portion of the "regulations" referred to in the covenant entitled "Second" and adopted in November 1996 (the "1996 Regulations") by the Southeastern Jurisdictional Administrative Council: "Each owner shall pay annually a SERVICE CHARGE in an amount fixed by the SEJ Administrative Council for police protection, street maintenance, street lighting, drainage maintenance, administrative costs and upkeep of the common areas."

Defendants argue that the restrictive covenants do not specifically set out an affirmative obligation to pay any money to plaintiff or anyone else. We agree.

This Court has set out the standard for reviewing covenants imposing affirmative obligations in a number of cases.

> Covenants that impose affirmative obligations on property owners are strictly construed and unenforceable unless the obligations are imposed "in clear and unambiguous language" that is "sufficiently definite" to assist courts in its application. To be enforceable, such covenants must contain "some ascertainable standard" by which a court "can objectively determine both that the amount of the assessment and the purpose for which it is

levied fall within the contemplation of the covenant." Assessment provisions in restrictive covenants (1) must contain a " 'sufficient standard by which to measure . . . liability for assessments,' " . . . (2) "must identify with particularity the property to be maintained," and (3) "must provide guidance to a reviewing court as to which facilities and properties the . . . association . . . chooses to maintain."

*Allen v. Sea Gate Assn.*, 119 N.C. App. 761, 764, 460 S.E.2d 197, 199 (1995) (quoting *Beech Mountain Property Owners' Assoc., Inc. v. Seifart*, 48 N.C. App. 286, 295, 269 S.E.2d 178, 183 (1980), and *Figure Eight Beach Homeowners' Ass'n, Inc. v. Parker*, 62 N.C. App. 367, 376, 303 S.E.2d 336, 341 (1983), *disc. review denied*, 309 N.C. 320, 307 S.E.2d 170 (1983)).

Thus, the question becomes whether, by the standards set out in prior cases, the language from the 1996 Regulations is both "reasonable" and "sufficiently definite." We conclude that it is not.

The duty to pay an assessment is an affirmative obligation; strict construction of the covenant would require such a duty to have specific authorization, not a secondary authorization under the rubric of rules and regulations. In the instant case where plaintiff is not a homeowners' association seeking to use assessments, but is instead a property developer seeking to impose a financial condition on owners who purchased lots earlier—more than 35 years ago in the case of defendant Huffman—this situation does not fit within the guidelines of previous cases.

Defendants could not have foreseen from the wording of the restrictive covenants that they would be subject to assessments levied decades from the date they executed the deed. *See, e.g., Beech Mountain*, 48 N.C. App. at 296, 269 S.E.2d at 183 ("[N]othing in the record reflects that any of the defendants could have known at the time they accepted their deeds what roads or trails would be required to be maintained with revenues from assessments.")

Without an express authorization to levy assessments in the text of the covenants, plaintiff attempts to rely on its ability to set rules, regulations and by-laws as an intermediate step toward assessments. Their argument is thus: since they rightfully can set rules, if they set a rule that contains an assessment, then the assessment is valid under the rulemaking authority. This logic assumes that an assessment is merely a rule. The rule for construction of covenants refutes this

assumption. "[C]ovenants purporting to impose affirmative obligations on the grantee [must] be strictly construed and not enforced unless the obligation be imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application." *Id.* at 295, 269 S.E.2d at 183.

Because the covenants in the Huffman and Emerson deeds do not explicitly authorize assessments and such power cannot be inferred from the ability to set rules and regulations, plaintiff lacked the authority to levy an assessment against the homeowners. Therefore, the trial court committed error in granting summary judgment in favor of plaintiff in the absence of this authority.

*B. Defendants Patten*

[2] The Pattens' deed is subject to a different set of covenants which specifically provides for service charges. As such, defendants Patten do not argue that the covenants do not require service charges be paid. Instead, they argue that plaintiff is not using those funds for the specific terms set out by the restrictive covenants.

The applicable covenants state: "A. Each owner shall pay annually a SERVICE CHARGE in an amount fixed by the SEJ Administrative Council for garbage and trash collection, police protection, fire protection, street maintenance, street lighting and upkeep of common areas." The real property subject to these covenants is described as "Hickory Hill, section one," and includes a plat showing four lots, all side by side, on Tillman Drive. The covenants further state: "No property other than that described above shall be deemed subject to this Declaration, unless specifically made subject thereto." Defendants argue plaintiff is not abiding by the restriction in the deed because the Pattens' payments are used to provide services not only to the four lots mentioned in the covenant, but also to other properties.

Although the Pattens' deed does contain an explicit authorization to collect assessments in the form of service charges, the authorizing clause is not sufficiently definite to be enforceable, therefore we hold the court erred in granting summary judgment to plaintiff on this issue. In *Figure Eight*, this Court interpreted *Beech Mountain* as setting out a three-part test to determine the validity of an assessment based on the wording of the covenant: Does the covenant (1) describe an adequate standard to measure the amount of the assessment; (2) identify with particularity the property to which the assessment

applies; and (3) give guidance to the reviewing court as to the facilities maintained with the assessment funds. *Id.*, 62 N.C. App. at 376, 303 S.E.2d at 341.

Because the elements of the service charge listed in the Pattens' covenant do not give sufficient information to determine the amount of the assessment, nor describe with particularity the property to be maintained, nor give guidance as to the facilities actually maintained, it was error to grant summary judgment to plaintiff and allow plaintiff to collect an unenforceable service charge.

## II.  Counterclaims

[3] Defendants next argue that the trial court erred in dismissing the Pattens' counterclaim because neither party presented evidence on the counterclaim at the summary judgment hearing, and therefore the matter was not at issue. This argument is without merit.

The counterclaim, which is for slander of title, relates to a claim of lien filed by plaintiff against two separate lots owned by the Pattens. The Pattens did not pay the service charges assessed against those lots because they did not believe the funds were being spent on the maintenance of those lots. Plaintiff filed a claim of lien against the lots for the amount owed, and in order to then sell the lots, the Pattens had to pay the amount in dispute. The trial court's order includes a dismissal with prejudice of the counterclaim, even though no evidence was presented on the claim by either party. Defendants argue that plaintiff's failure to provide evidence that no genuine issue of material fact existed means their motion for summary judgment on this claim should not have been granted. This argument is without merit.

As plaintiff notes, defendants' counterclaim fails to allege or forecast any evidence as to the element of malice, an essential element of slander of title. *See Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 30, 588 S.E.2d 20, 28 (2003) ("The elements of slander of title are: (1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages."). "Where the forecast of evidence available demonstrates that a party will not be able to make out at least a prima facie case at trial, no genuine issue of material fact exists and summary judgment is appropriate." *Metts v. Turner*, 149 N.C. App. 844, 846, 561 S.E.2d 345, 346 (2002). As such, the trial court's dismissal of the claim was proper, and we overrule this assignment of error.

### III. Non-controverted facts

[4] Finally, defendants argue that the trial court erred by including "non-controverted facts" in its order, and thus those facts should be disregarded by this Court on appeal. This argument is without merit.

The six facts listed by the trial court in this instance do not appear to be *findings* of fact but rather *recitations* of facts from the record that were not disputed at the trial court level nor disputed to this Court on appeal. Defendants correctly note that "if findings of fact are necessary to resolve an issue, summary judgment is improper." *Broughton*, 161 N.C. App. at 33, 588 S.E.2d at 30 (citation omitted). However, given that these are not findings of fact, this statement is inapplicable. As such, we overrule this assignment of error.

Affirmed in part; reversed in part.

Judge WYNN concurs.

Judge HUNTER dissents in a separate opinion.

HUNTER, Judge, dissenting in part.

Because I would affirm as to all defendants, I respectfully dissent.

As the majority states, the standard for reviewing covenants imposing affirmative obligations is as follows:

> Covenants that impose affirmative obligations on property owners are strictly construed and unenforceable unless the obligations are imposed "in clear and unambiguous language" that is "sufficiently definite" to assist courts in its application. To be enforceable, such covenants must contain "some ascertainable standard" by which a court "can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant." Assessment provisions in restrictive covenants (1) must contain a " 'sufficient standard by which to measure . . . liability for assessments,' " . . . (2) "must identify with particularity the property to be maintained," and (3) "must provide guidance to a reviewing court as to which facilities and properties the . . . association . . . chooses to maintain."

*Allen v. Sea Gate Assn.*, 119 N.C. App. 761, 764, 460 S.E.2d 197, 199 (1995) (quoting *Beech Mountain Property Owners' Assoc. v.*

*Seifart*, 48 N.C. App. 286, 295, 269 S.E.2d 178, 183 (1980), and *Figure Eight Beach Homeowners' Assoc. v. Parker*, 62 N.C. App. 367, 376, 303 S.E.2d 336, 341, *disc. review denied*, 309 N.C. 320, 307 S.E.2d 170 (1983)).

### A. Defendants Emerson and Huffman

As the majority notes, under our case law, the question before this Court is whether the language from the 1996 Regulations from the Emerson and Huffman deeds is both " 'reasonable' " and " 'sufficiently definite.' " I believe that it is and would therefore affirm the trial court's ruling.

Defendants Hoffman and Emerson argue that, because the restrictions in their deeds make no specific reference to affirmative payments but simply refer to potential future regulations that might impose such requirements, plaintiff's claim fails under this standard. That is, they claim the reference to regulations that might be passed in the future is too vague to be enforced.

Generally, this Court looks for " 'sufficiently definite' " language in the covenants at issue. The distinct feature of this case is that the challenge is brought not to the covenants, as in the cases cited immediately above, but to the regulations passed later via the authority granted in the covenants. As such, the appropriate application of the " 'sufficiently definite' " test is not to the language in the deed but to the language of the 1996 Regulations.

Another consideration—separate but related to the first—also comes into play due to this distinct feature. The 1996 Regulations correspond in a legal sense most closely to an amendment to the covenants in the deeds, and our Supreme Court recently held that any amendments to restrictive covenants must be "reasonable." *Armstrong v. Ledges Homeowners Ass'n*, 360 N.C. 547, 548, 633 S.E.2d 78, 81 (2006). The case does not define this term, but does hold that the "broad" nature of the assessments created by the amendment makes them unreasonable. *Id.*

Thus, as the majority notes, the question before us is whether by these standards the following language from the 1996 Regulations is both "reasonable" and "sufficiently definite": "Each owner shall pay annually a SERVICE CHARGE in an amount fixed by the SEJ Administrative Council for police protection, street maintenance, street lighting, drainage maintenance, administrative costs and upkeep of the common areas." I believe that it is.

The types of assessments this Court and our Supreme Court have struck down tend to be general statements of wholesale purpose. For example, the regulations at issue in *Armstrong* created assessments for the " 'safety, welfare, recreation, health, common benefit, and enjoyment of the residents[.]' " *Armstrong*, 360 N.C. at 558, 633 S.E.2d at 87. Our Supreme Court considered this language too "broad" and "unreasonable" and, as such, held the amendment invalid and unenforceable. *Id.* at 548, 633 S.E.2d at 81. In *Beech Mountain*, this Court found that covenants creating an assessment for " 'road maintenance and maintenance of the trails and recreational areas' " and further assessments for vaguely described " 'recreational fees' " or " 'recreational areas' " were not sufficiently definite and therefore were unenforceable. *Beech Mountain*, 48 N.C. App. at 295-96, 269 S.E.2d at 183.

The language in the case at hand names both specific purposes and specific physical locations for which the money is intended. It neither names general abstract goals, as in *Armstrong*, nor lists general categories of areas but not actual goals, as in *Beech Mountain*. Accordingly, I believe the language is sufficiently definite and reasonable and therefore enforceable.

This holding is in accord with this Court's earlier holdings that held invalid clauses conferring the general power to make any and all assessments at a future date. "Obviously, a covenant which purports to bind the grantee of land to pay future assessments in whatever amount to be used for whatever purpose the assessing entity might from time to time deem desirable would fail to provide the court with a sufficient standard." *Beech Mountain*, 48 N.C. App. at 295, 269 S.E.2d at 183. However, as our Supreme Court noted in *Armstrong*, "[d]eclarations of covenants that are intended to govern communities over long periods of time are necessarily unable to resolve every question or community concern that may arise during the term of years." *Armstrong*, 360 N.C. at 557, 633 S.E.2d at 86. As such, homeowners' associations must be allowed some latitude, so long as the amendments follow the requirements of being reasonable and definite.

### B.  Defendants Patten

The Pattens' applicable covenants state: "A[.] Each owner shall pay annually a <u>SERVICE CHARGE</u> in an amount fixed by the SEJ Administrative Council for garbage and trash collection, police protection, fire protection, street maintenance, street lighting and

upkeep of common areas." The covenants further state: "No property other than that described above shall be deemed subject to this Declaration, unless specifically made subject thereto." Defendants argue that, because the Pattens' payments are used to provide services not just to these four lots but to property outside section one, plaintiff is not abiding by the restriction in the deed.

However, as plaintiff notes, the covenants pertain to the "Hickory Hill Subdivision." Further, although it is true that restrictive covenants are strictly construed, "a restrictive covenant 'must be reasonably construed to give effect to the intention of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of a restriction.'" *Page v. Bald Head Ass'n*, 170 N.C. App. 151, 155, 611 S.E.2d 463, 466 (2005) (quoting *Black Horse Run Ppty. Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 85, 362 S.E.2d 619, 621 (1987)). To hold that plaintiff should somehow determine the cost of maintaining "garbage and trash collection, police protection, fire protection, street maintenance, [and] street lighting" for these four houses is to reduce the restrictive covenant to a logical absurdity. Therefore, I believe that this assignment of error should be overruled.

I agree with the majority's conclusion that the trial court did not err in dismissing the Pattens' counterclaim.

Because I believe that the service charges were reasonable and the trial court did not err by dismissing the counterclaims or including a recitation of facts in its order, I would affirm on all counts. Therefore, I respectfully dissent.