BEECH MOUNTAIN PROPERTY OWNER'S ASSOCIATION, INC., AND
EUGENE BRADSHAW AND VIRGINIA D. BRADSHAW, PLAINTIFFS v.
CURT SEIFART, SR. AND HARRIETTE N.W. SEIFART, DEFENDANTS;
BEECH MOUNTAIN PROPERTY OWNER'S ASSOCIATION, INC., AND
CHARLES E. BLACK, PLAINTIFFS v. FRED J. COLLINS, JR., AND SHIR-
LEY COLLINS, DEFENDANTS; BEECH MOUNTAIN PROPERTY OWNER'S
ASSOCIATION, INC., AND JOHN DORRIER AND NANCY DORRIER,
PLAINTIFFS v. THOMAS F. MOORE, JR., AND GEORGE K. CUTTER, DEFEND-
ANTS

No. 7924DC900

(Filed 19 August 1980)

1. Deeds § 20– assessment covenants – indefiniteness – unenforceability by prop-
erty owners' association

Covenants in deeds to owners of lots in a recreational development
requiring the owners to be members of a property owners' association and to
pay to the association "reasonable annual assessment charges for road
maintenance and maintenance of the trails and recreational areas,"
"reasonable annual assessment charges for road maintenance, recreational
fees, and other charges assessed by the Association," or "all dues, fees,
charges, and assessments made by that organization, but not limited to
charges for road maintenance, fire protection, and security services" *are
held* not sufficiently definite and certain to be enforceable, since the cove-
nants contain no sufficient standard by which to measure the amount of a lot
owner's liability for assessments, and none of the covenants identifies with
particularity the property to be maintained.

2. Deeds § 20– assessment covenants – indefiniteness not cured by articles of
incorporation of property owners' association

Even if purchasers of lots in a recreational development had construc-
tive notice of the contents of the articles of incorporation of a property
owners' association for the development, indefiniteness in assessment cove-
nants in deeds to the purchasers was not cured by statements in the articles
of incorporation that the association was organized for the purpose of estab-
lishing "reasonable annual assessment charges for road maintenance and
maintenance of the trails and recreational areas" and to serve as advisor to
the developer "on desires of the property owners for: road improvements,
skiing, golfing, swimming, private club and/or any other type recreational
programs" since the statements in the articles of incorporation were equally

as indefinite as the covenants themselves. Nor could an amendment to the articles of incorporation make definite the assessment covenants which were incorporated in deeds to purchasers years before the amendment was adopted.

APPEAL by plaintiffs from *Braswell (J. Ray), Judge*. Judgment entered 18 May 1979 in District Court, WATAUGA County. Heard in the Court of Appeals 24 March 1980.

In these three cases, which were consolidated for hearing both at trial and on this appeal, plaintiffs seek recovery of unpaid assessments which they contend are owed by defendants, property owners at Beech Mountain, to the Beech Mountain Property Owners' Association, Inc.[1] The cases were heard on motions for summary judgments. Documentary evidence, affidavits, and stipulations presented in support of the motions show the following:

In the late 1960's, Carolina Caribbean Corporation, owner of large tracts of land around Beech Mountain in Watauga and Avery Counties, N.C., began development of the area. Plats were prepared and lots were thereafter sold by the developer subject to one of three sets of recorded "Declarations of Restrictions." These three, as they related to assessments, provided as follows:

1. Assessment provision applicable to lots in Ski-Way Tract, Beech Mountain Subdivision:

It is agreed that as soon as a sufficient number of lots have been sold in this development a property owners association, to be known as the "Beech Mountain Property Owners' Association," shall be formed with one mem-

---

[1]Earlier cases brought by the Property Owners' Association to collect the assessments were dismissed because the Association was not then a property owner and therefore lacked capacity to enforce the covenants under which the assessments were imposed. *Property Owners' Assoc. v. Current* and *Property Owners' Assoc. v. Moore*, 35 N.C. App. 135, 240 S.E. 2d 503 (1978). Prior to instituting the present cases the Association acquired property at Beech Mountain; in addition, individual land owners at Beech Mountain have joined as plaintiffs in each of the present cases.

bership for each property owner and that this Association in conjunction with the Company shall establish reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas; it being understood that the Company shall exercise only one vote in this Association.

The defendants Seifart in Case No. 78CVD226 own a lot in the Ski-Way Tract to which this provision is applicable, having acquired title by deed dated 25 August 1970 from the developer, Carolina Caribbean Corporation.

2. Assessment provisions applicable to Condominium Sites:

It is agreed that each unit owner will join the "Beech Mountain Property Owners' Association" and shall maintain such membership so long as he owns the property, and shall pay reasonable annual assessment charges for road maintenance, recreational fees, and other charges assessed by the Association. For purposes of said Association, each unit owner shall be considered a property owner and entitled to one (1) vote, with each unit being entitled to a separate vote and subject to separate assessments, even if more than one unit is owned by one individual.

The defendants Collins in Case No. 78CVD255 own a condominium unit to which this provision is applicable, having acquired title by deed dated 15 March 1973.

3. Assessment provision applicable to Chalet Sites:

The owner of any lot subject to these restrictions shall join the Beech Mountain Property Owners' Association, and shall pay all dues, fees, charges, and assessments made by that organization, but not limited to charges for road maintenance, fire protection, and security services. The failure to pay these charges shall result in a lien upon the lot subject to foreclosure.

The defendants Moore and Cutter in Case No. 79CVD105 own a lot to which this provision is applicable, having acquired title by

deed dated 7 December 1972 from the developer, Carolina Caribbean Corporation.

In July 1970 Articles of Incorporation were issued for Beech Mountain Property Owners' Association which stated that the purposes for which the corporation was organized were:

a. In conjunction with the Company (Carolina Caribbean Corporation, Beech Mountain) shall establish reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas.

b. Act as a mediation board for grievances between property owners and the corporation.

c. Advisory to the corporation on desires of the property owners for: road improvements, skiing, golfing, swimming, private club and/or any other type recreational programs.

d. To improve and enhance Beech Mountain as a resort and recreation area.

e. To promote association, friendship, understanding and cooperation among all members of the association.

f. To promote and foster activities and programs of benefit to members and their families.

On 4 November 1975 Amended Articles of Incorporation were issued which stated the corporate purposes to be:

(1) To promote the health, safety, and welfare of the property owners, residents and guests within Beech Mountain Resort, located in Watauga and Avery Counties, North Carolina, including all property heretofore or hereafter developed as a part of said Resort by Carolina Caribbean Corporation or its successors or assigns (which said property is hereinafter referred to as "the community").

(2) To own, acquire, build, operate and maintain recreation parks, playgrounds, golf courses, swimming pools, boating,

swimming, and fishing lakes, tennis courts, ski slopes and lodges, clubhouses, and such other facilities as the members may desire, including the common grounds, footpaths, roads and streets within the community.

(3) To arrange on a collective basis for fire and security protection; street, landscape, drainage, recreation facility and other common areas maintenance; snow, garbage and trash removal and disposal, and for any other common service or facilities which the members may consider desirable.

(4) To fix assessments or charges to be levied against the members for providing said services and facilities, which assessments, if unpaid, are to become a lien on the land in the community of the member not making such payments, pursuant to the various Declarations of Restrictions as are applicable to the various property in the community.

At the times the several defendants took title to their respective properties, the developer, Carolina Caribbean Corporation, handled assessment for maintenance of roads and recreational areas, and the Property Owners' Association collected and retained membership dues only. In 1974, upon Carolina Caribbean Corporation's recommendation, the Property Owners' Association itself imposed a road maintenance assessment for developed lots of $50 per year, a road maintenance, fire and security assessment of $100 for lots with dwellings and condominium units, and a recreational maintenance assessment of $100 per lot. The Association also established dues of $10 per year and an assessment of $5 per month per dwelling or condominium for garbage collection.

The following year, 1975, Carolina Caribbean Corporation began experiencing severe financial difficulties, and it was necessary for the Property Owners' Association to take a more active role in supporting the development. In February 1975 Carolina Caribbean Corporation filed for corporate reorganization under Chapter X of the Bankruptcy Act and a trustee in bankruptcy was appointed in March 1975. At that time all recreational facilities at the Beech Mountain development, in-

cluding the ski slopes, the golf course, tennis courts, and swimming facilities were owned by Carolina Caribbean Corporation and came under the control of the trustee in bankruptcy. During the winter of 1975-1976 the Property Owners' Association entered into a short term lease with the trustee of the bankrupt developer so that the ski facilities could be operated during the ski season. Because there were sufficient revenues available from the previous year's assessments, no changes were made in the 1975 annual assessments.

When the Property Owners' Association was advised for the fiscal year 1975-1976 that it would recieve no further support from the bankrupt developer, the Property Owners' Association increased membership dues from $10 to $20, and increased the assessment for road, fire, and security by $50 for improved lots. The same assessment schedule was approved by the Association for the fiscal years 1976, 1977, and 1978.

The parties stipulated:

The following is a list of the real property and amenities which have been deeded to the Beach Mountain Property Owners' Association, Inc. (hereinafter referred to as BMPOA) by R. O. Hutchison, as Trustee for the bankrupt developer, Carolina Caribbean Corporation:

(A) The Beech Mountain Golf Course consisting of one eighteen (18) hole golf course on one hundred twenty (120) acres.

(B) A 2.119 acre tract adjoining the golf course and known as the Beech Mountain Golf Course Clubhouse.

(C) A 13.25 acre tract known as the Tennis Court property consisting of eight (8) paved tennis courts, a swimming pool with snack bar, and pro shop.

(D) A 2.08 acre tract upon which is located the corporate offices of the Beech Mountain Property Owners' Association, Inc., and Beech Mountain Security and the maintenance operations of the Beech Mountain Property Owners' Association, Inc.

(E) Several tracts in Avery and Watauga County, consisting of the Beech Mountain Utility Corporation which provides water and sewer services for Beech Mountain. The water and sewer operations consist of:

(1) Two (2) well sites.

(2) A storage tank area consisting of a 200,000 gallon tank, a 65,000 gallon tank and a pumping station.

(3) The Pond Creek Waste Water Treatment Plant.

(4) The Grassy Gap Waste Water Treatment Plant.

(5) Lake Coffey (approximately twelve (12) acres) and adjoining water treatment plant.

(6) Tamarack Water Treatment Plant and adjoining lake (one (1) acre).

(7) The Skiloft Storage Tank Site, consisting of a twenty three thousand (23,000) gallon storage tank and pump.

(8) The Cliffs Water Storage Tank site consisting of an eight thousand (8,000) gallon tank.

(9) The Mariah Pump Station and pump.

(10) A tank site off S.R. 1331 consisting of a one hundred thousand (100,000) gallon storage tank and pump.

(11) All utility easements and rights-of-way over, through and under the property and roads located on Beech Mountain.

(12) All personal property used in the operation and maintenance of the Beech Mountain Utility Corporation.

The above stated tracts of land and personal assets have been transferred to the Beech Mountain Utility Corporation. The Beech Mountain Utility Corporation was

formed by the BMPOA Inc. and the BMPOA Inc. is the sole shareholder of the corporation.

\*   \*   \*   \*   \*

(H) The BMPOA Inc. maintains and operates fifty-eight (58) miles of gravel roads within the Beech Mountain resort complex, and eighteen (18) hole golf course, a swimming pool, tennis courts, hiking trails, a security system, and supports a fire department with assessments paid by its members and income derived from its assets and operations.

(I) The tennis courts, swimming facilities, golf course and the clubhouse facilities are for the exclusive use of the members of the BMPOA Inc. in good standing and their guests; however, the public is invited to use the golf course in Spring and Fall when golf course use is less than capacity at a rate in excess of use charge to members. With respect to any facilities which the general public might use, such as the ski facilities, the public is charged a use rate in excess of the charge to a BMPOA Inc. member in good standings. The BMPOA Inc. provides no support for operation and maintenance of the ski facilities.

\*   \*   \*   \*   \*

(T) The Beech Mountain Property Owners' Association, Inc. paid the following amounts for the amenities:

(a) Golf Course                         $600,000.00

(b) Golf Course Clubhouse               100,000.00

(c) Recreation areas
    (Tennis Courts,
    Swimming Pool)                      100,000.00

Approximately 2700 property owners at Beech Mountain pay membership dues and annual assessments to the Beech Mountain Property Owners' Association, Inc. Defendants

Seifart paid such membership dues and assessments for the fiscal years 1973-1974 and 1974-1975, but did not pay such dues and assessments thereafter. Records maintained by the Association indicate that defendants Seifart owe $874.85 for annual assessments for the years 1975-1976, 1976-1977, and 1977-1978. Defendants Collins and defendants Moore and Cutter have never paid any membership dues or assessments to the Association. Records of the Association indicate that defendants Collins owe $1,088.19 for annual assessments for the years 1974-1975, 1975-1976, 1976-1977 and 1977-1978, and defendants Moore and Cutter owe $286.59 for the years 1976-1977 and 1977-1978.

The Beech Mountain Property Owners' Association, Inc. has provided road maintenance, security patrol, fire protection, and garbage removal to defendants' homes, as well as maintaining its own facilities, even though the defendants have paid no assessments to the Association.

The district court granted defendants' motions for summary judgment. From judgment dismissing the actions, plaintiffs appeal.

*Finger, Watson & di Santi by C. Banks Finger and Anthony S. di Santi; Poyner, Geraghty, Hartsfield & Townsend by John J. Geraghty and Cecil W. Harrison, Jr. for plaintiff appellants.*

*Clement & Miller by Paul E. Miller, Jr.; Smith, Moore, Smith, Schell & Hunter by David M. Moore, II for defendant appellees.*

PARKER, Judge.

[1] The issue raised by this appeal is whether the covenants upon which the Property Owners' Association relies to assess defendants are sufficiently certain and definite to be enforceable. We hold that they are not. Accordingly, we do not address the question whether the covenants run with the land so as to be enforceable by parties other than the original grantor, Carolina Caribbean Corporation.

It is, of course, true that "[a] grantee, who accepts a deed

containing otherwise valid covenants purporting to bind him, thereby becomes bound for the performance of such covenants." *Cummings v. Dosam, Inc.,* 273 N.C. 28, 31, 159 S.E. 2d 513, 516 (1968). However, just as covenants restricting the use of property are to be strictly construed against limitation on use, *Hege v. Sellers,* 241 N.C. 240, 84 S.E. 2d 892 (1954), and will not be enforced unless clear and unambiguous, *Hullett v. Grayson,* 265 N.C. 453, 144 S.E. 2d 206 (1965), even more so should covenants purporting to impose affirmative obligations on the grantee be strictly construed and not enforced unless the obligation be imposed in clear and unambiguous language which is sufficiently definite to guide the courts in its application. While counsel on this appeal have cited no decision of our own Supreme Court, and our own research has disclosed none, which has discussed the standard properly applicable in determining whether a particular covenant involving future assessments is sufficiently definite to be enforceable, courts of other states which have considered the question have stressed the necessity for some ascertainable standard contained in the covenant by which the court can objectively determine both that the amount of the assessment and the purpose for which it is levied fall within the contemplation of the covenant. *Compare Kell v. Bella Vista Vil. Prop. Owners Ass'n.,* 258 Ark. 757, 528 S.W. 2d 651 (1975) and *Rodruck v. Sand Point Maintenance Commission,* 48 Wash. 2d 565, 295 P. 2d 714 (1956) with *Peterson v. Beekmere, Incroporated,* 117 N. J. Super. 155, 283 A. 2d 911 (1971). Obviously, a covenant which purports to bind the grantee of land to pay future assessments in whatever amount to be used for whatever purpose the assessing entity might from time to time deem desirable would fail to provide the court with a sufficient standard.

Examining the three covenants at issue in the present case, we find no sufficient standard by which to measure the defendants' liability for assessments. None of the covenants identifies with particularity the property to be maintained. The first covenant, being the one incorporated by reference into the deeds for lots in the Ski-Way Tract of the Beech Mountain subdivision, refers to "reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas," and the two other covenants refer more

generally to assessments for "road maintenance." Although the parties stipulated that as of 2 May 1979 the Property Owners' Association was maintaining fifty-eight miles of gravel roads within the resort complex, as well as hiking trails, nothing in the record reflects that any of the defendants could have known at the time they accepted their deeds what roads or trails would be required to be maintained with revenues from assessments. Even more important is that there is nothing in the covenant which can guide the court should it be called upon to review the determination by the Property Owners' Association as to what particular roads and trails it elects to maintain. Two of the covenants refer to assessment charges for "recreational fees" or "recreational areas," but again no specific recreational areas are either described or referred to which are to be maintained. Even though Carolina Caribbean Corporation owned certain recreational facilities at Beech Mountain at the time the defendants acquired title to their lots, the covenants do not refer specifically to those facilities or require that the assessments be used to maintain those particular facilities.

[2] Further, even if it be assumed that the defendants and others who purchased property at the time the original Articles of Incorporation of the Beech Mountain Property Owners' Association were on record had constructive notice of their contents, the statement in those articles of the purposes for which the Association was organized is equally as indefinite as the covenants themselves. They recite in pertinent part that the Association was organized for the purpose of establishing "reasonable annual assessment charges for road maintenance and maintenance of the trails and recreational areas," and to serve as adviser to Carolina Caribbean Corporation "on desires of the property owners for: road improvements, skiing, golfing, swimming, private club and/or any other type recreational programs." The subsequently adopted amendment to the Articles of Incorporation states the purposes in far greater detail, but such amendment cannot make definite the assessment covenants which were incorporated into defendants' deeds years before the amendment was adopted. Indeed, the very breadth of corporate purposes stated in the amendment and the wide-ranging activities engaged in by the Property Owners' Association under authority of its amended charter furnish

Mace v. Construction Corp.

strong evidence that there is no clearly defined limiting standard by which the court can determine whether the assessment made in any particular year against any particular property owner is authorized both as to amount and purpose by the covenant applicable to his property.

It may well be that the Property Owners' Association performs a desirable function and that its activities enhance the value of all properties within its area of service. That, however, furnishes no sufficient basis for the court to decree enforcement of the assessments here in question.

Affirmed.

Chief Judge MORRIS and Judge HILL concur.