JOHN F. MIESCH AND WIFE, LINDA T. MIESCH, PLAINTIFFS v OCEAN DUNES HOME-
OWNERS ASSOCIATION, INC., DEFENDANT

No. COA94-1337

(Filed 7 November 1995)

**Housing, and Housing Authorities. and Projects § 54
(NCI4th)— user fee imposed on short term condominium
renters—fee not authorized by document or statute**

Neither the Declaration of Ownership in condominium prop-
erty, the Articles of Incorporation of defendant homeowners
association, the bylaws of the association, nor N.C.G.S. Ch. 47A
or N.C.G.S. Ch. 47C authorized defendant association to require
persons who rented units within the condominium on a short
term basis to pay a fee to use common areas and recreational
facilities to which the owners of the units, their guests, and invi-
tees had been granted an easement.

**Am Jur 2d, Condominiums and Cooperative
Apartments §§ 32-37.**

**Expenses for which condominium association may
assess unit owners. 77 ALR3d 1290.**

**Validity and construction of condominium bylaws or
regulations placing special regulations, burdens, or restric-
tions on nonresident unit owners. 76 ALR4th 295.**

Appeal by defendant from judgment entered 18 July 1994 by
Judge W. Allen Cobb, Jr., in New Hanover County Superior Court.
Heard in the Court of Appeals 1 September 1995.

*Ward & Smith, P.A., by Anne D. Edwards and W. Daniel Martin,
III, for plaintiff-appellees.*

*Murchison, Taylor, Kendrick, Gibson & Davenport, L.L.P., by
Michael Murchison and Alan D. McInnes, for defendant-
appellant.*

MARTIN, John C., Judge.

Plaintiffs are the owners of a residential unit in Ocean Dunes
Condominiums ("the Condominium"), a condominium development
located at Kure Beach, North Carolina. The Condominium consists of
approximately 196 individual units, together with swimming pools,

MIESCH v. OCEAN DUNES HOMEOWNERS ASSN.

[120 N.C. App. 559 (1995)]

tennis courts and various other recreational facilities and common areas. A majority of the units within the Condominium are available for short-term rental, although some of the owners are permanent residents and do not rent their units.

Pursuant to the provisions of the Declaration Creating Unit Ownership of Property ("the Declaration"), the owner of a unit in the Condominium also owns, as an appurtenance to the ownership of each unit, an undivided proportional interest in the common areas and facilities of the Condominium. The Declaration provides:

> Common areas and facilities shall be, and the same are hereby declared to be subject to a perpetual non-exclusive easement in favor of all of the owners of units in OCEAN DUNES, for their use and the use of their immediate families, guests or invitees, for all proper and normal purposes . . . .

Defendant Ocean Dunes Association, Inc., ("the Association") is a non-profit corporation organized for the purpose of administering the operation and management of the Condominium as provided by the Declaration; it is the homeowners association for the Condominium. The Articles of Incorporation of the Association grant it "all of the powers and privileges granted to Non-Profit Corporations under the law pursuant to which this Corporation is chartered," and "powers reasonably necessary to implement and effectuate the purposes of the Corporation." These include the power to make reasonable rules and regulations governing the use of the common areas, and the power to levy and collect assessments against members of the Association to defray the common expenses of the Condominium. Membership in the Association is limited to owners of condominium units.

The By-Laws of the Association require that it exercise its powers and duties in accordance with the Articles of Incorporation, the By-Laws and the Declaration. The By-Laws include the power and duty: "To maintain, repair, replace, operate and manage the common areas and facilities . . . for the benefit of [the Association's] members." The By-Laws further provide:

> The cost and expenses of holding, owning, maintaining, managing, controlling, repairing, replacing, preserving, caring for and operating all common areas of the "OCEAN DUNES" Condominium shall be "common expenses" and included in the budget for each fiscal year for the Association . . . .

The Declaration states:

> The common expenses of the Association shall be shared by
> the unit owners in amounts determined by applying each unit
> owner's proportionate share of ownership in the common areas
> and facilities to the total common expenses of the Association,
> and as assessed against the unit owners, and their units as pro-
> vided for hereinafter.

In October 1992, the Board of Directors of the Association
adopted a policy to charge a "maintenance assessment fee," subse-
quently called a "user fee," to "short term renters" of units within the
Condominium, i.e., persons leasing units for less than twenty-eight
days. Payment of the fee is required in order for "short term renters"
to use the Condominium's common areas and facilities, which include
parking and drive areas, tennis courts, swimming pools, pool decks
and recreational facilities. The fee is not charged to those renting
units for twenty-eight days or more, to unit owners, or to nonpaying
guests or invitees of unit owners.

The monies collected from the user fee are paid to the
Association, and placed in a separate bank account referred to as the
"Guest Services Division" account, which is maintained under the
supervision, direction, and control of the Association's Board of
Directors and is used to pay Association employees who perform var-
ious duties such as registering renters and guests, dispensing orien-
tation packets and parking passes, informing renters about the facili-
ties and area attractions, planning occasional recreational activities
for renters, and providing security services to enforce the
Association's rules and regulations regarding use of the common
areas and facilities.

Plaintiffs rent their unit in the Condominium on a short term
basis. Alleging that they have entered into numerous contracts to rent
their unit, including use of the common areas and recreational facili-
ties of the Condominium, for a fixed rate which does not include the
user fee, plaintiffs brought this action seeking a declaratory judgment
that the Association has no power to adopt and enforce the user fee
policy to collect the fees from any persons other than all of the own-
ers of units within the Condominium. Plaintiffs also sought injunctive
relief.

Neither plaintiffs nor defendant requested a jury trial. The trial
court proceeded to hear evidence and found that while the

Association was empowered to levy assessments against its members to defray the common expenses of the Condominium, there was no statutory authority and no provisions in the Declaration, Articles of Incorporation or By-Laws which authorized or permitted the Association to levy assessments against, or collect fees from, guests or invitees of owners of units within the Condominium or renters of those units. The court found and concluded that requiring short term renters to pay for use of the common areas infringed upon the perpetual non-exclusive easement in favor of all unit owners for their use and the use of their immediate families, guests and invitees. The trial court also found and concluded that by adopting the user fee, the Association had impermissibly created two different classes of unit owners: (1) owners who do not lease their units to short term renters, and (2) owners who do lease their units to short term renters. Thus, the trial court concluded that defendant's board of directors did not have the power to adopt and enforce the user fee, and declared that the user fee was invalid and unenforceable. Defendants appeal.

---

The numerous assignments of error, primarily directed to findings of fact made by the trial court and the legal conclusions which it drew, present to us essentially a single issue: whether the Declaration, Articles of Incorporation, or Bylaws authorize defendant Association to require persons who rent units within the Condominium on a short term basis to pay a fee to use common areas and recreational facilities to which the owners of the units, their guests and invitees, have been granted an easement. In our opinion, no such authority exists in the case before us here, and we affirm the judgment of the trial court.

The standard of review of a judgment rendered under the declaratory judgment act is the same as in other cases. N.C. Gen. Stat. § 1-258. Thus, where a declaratory judgment action is heard without a jury and the trial court resolves issues of fact, the court's findings of fact are conclusive on appeal if supported by competent evidence in the record, even if there exists evidence to the contrary, and a judgment supported by such findings will be affirmed. *Insurance Co. v. Allison*, 51 N.C. App. 654, 277 S.E.2d 473, *disc. review denied*, 303 N.C. 315, 281 S.E.2d 652 (1981).

The trial court found the funds generated by the user fees collected from short term renters were used to defray common expenses as they were used to pay employees, including security personnel, who perform duties benefitting all owners, guests and invitees. These

duties included monitoring and regulating the common areas and facilities and the persons who use them. There is competent evidence in the record, particularly the testimony of Warren Bascome, President of the Association's Board of Directors in 1992, to support the trial court's finding and it is therefore conclusive.

There is also evidence to support the trial court's finding that the user fee creates two classes of owners for purposes of collecting money for common expenses. As noted above, the evidentiary record shows that the fee is assessed only against short term renters, and is used to defray common expenses. The fee thus amounts to an additional assessment for common expenses against invitees of only certain unit owners—those who lease their units to short term renters.

Defendant also assigns error to the trial court's finding that no provisions in the Declaration, Articles of Incorporation or By-Laws authorizes or permits the Association to levy or collect any assessment or fee from guests, invitees or renters of owners of units within the Condominium and that the documents contain no provisions permitting the Association to create different classes of owners or members. The Association's documents contain no express authorization for these acts. However, defendant argues that the grant of "powers reasonably necessary to implement and effectuate the purposes of the Corporation," and "the exclusive right to establish . . . rules and regulations," give it ample authority for these acts. In addition, defendant contends it has statutory authority for imposing the user fee.

"An act by a private or municipal corporation is *ultra vires* if it is beyond the purposes or powers expressly or impliedly conferred upon the corporation by its charter and relevant statutes and ordinances." *Rowe v. Franklin County*, 318 N.C. 344, 348-49, 349 S.E.2d 65, 68-69 (1986). In *Property Owner's Assoc. v. Seifart*, 48 N.C. App. 286, 269 S.E.2d 178 (1980), this Court addressed the enforceability of a property owners' association's assessment covenants. We stated,

> [J]ust as covenants restricting the use of property are to be strictly construed against limitation on use, and will not be enforced unless clear and unambiguous, even more so should covenants purporting to impose affirmative obligations on the grantee be strictly construed and not enforced unless the obligation be imposed in clear and unambiguous language . . . .

*Id.* at 295, 269 S.E.2d at 183 (citations omitted).

It is undisputed in this case that all unit owners have the right to lease and/or permit the use of their units to third parties, and, through the perpetual non-exclusive easement, to permit the use of the common areas and facilities by their immediate family, guests and invitees, including short term renters. The user fee, however, selectively restricts the easement rights of those owners who lease to short term renters by charging the renters for use of the common areas and facilities.

Further, the Association documents provide that common expenses are to be assessed *against the unit owners* in proportion to their ownership interest. The user fee, however, attempts to defray common expenses by enforcing a fee for use of the common areas and facilities against short term renters, which is tantamount to an additional fee for common expenses being selectively and disproportionately enforced against invitees of only certain unit owners in violation of the Association's documents.

Moreover, the fee may result in an additional affirmative obligation on owners in situations like plaintiffs' where contracts allegedly have already been entered into for fixed rental amounts that do not include the user fee. In such a case, the renter would have to pay an amount greater than contracted for, or be denied use of the common areas and facilities, exposing the owner to liability for breach of contract. Alternatively, the unit owner who leases to short term renters would have to pay the user fee out of his or her own pocket, again abrogating the common area expense provisions of the Association documents.

Thus, while we recognize that the user fee is intended as an assessment against short term renters rather than unit owners, still the fee restricts the express rights of unit owners who lease to short-term renters, is contrary to provisions in the Association's documents, and may even impose an additional affirmative obligation on unit owners. As *Seifart* instructs, such an act must be clearly and unambiguously authorized. Strictly construed, the general powers granted by the Association documents are not sufficient to impose the user fee.

We also affirm the trial court's ruling that no statutory authority exists for defendant to charge the user fee. The Condominium was created pursuant to N.C. Gen. Stat. § 47A, the (old) condominium act. In 1986, the General Assembly adopted N.C. Gen. Stat. § 47C, a new condominium act. Some, but not all of the provisions of the new act

MIESCH v. OCEAN DUNES HOMEOWNERS ASSN.

[120 N.C. App. 559 (1995)]

were made applicable to "old" associations. The "Official Comment" explains the reason for not applying all the new provisions to the old act:

> . . . to make all provisions of this Act automatically apply to "old" condominiums might violate the constitutional prohibition of impairment of contracts. In addition, aside from the constitutional issue, automatic applicability of the entire Act almost certainly would unduly alter the legitimate expectations of some present unit owners and declarants.

N.C. Gen. Stat. § 47C-1-102 (1987).

The new act grants to condominium associations the power to "[i]mpose and receive any payments, fees, or charges for the use, rental, or operation of the common elements other than limited common elements described in subsections 47C-2-102(2) and (4) and for services provided to unit owners." N.C. Gen. Stat. § 47C-3-102(10) (1987). This provision, however, was not made applicable to existing condominium associations. Therefore, we need not decide whether it would authorize the user fee at issue here.

In *Westbridge Condominium Assoc. v. Lawrence*, 554 A.2d 1163 (1989), the District of Columbia Court of Appeals stated:

> While it is not possible to foresee all the needs and problems that will arise in the operation of condominium property, unit owners must be able to rely upon the Bylaws to inform them of what is contemplated, particularly with respect to an association's authority to hold them liable for the condominium's expenses.

*Id.* at 1167. If a "user fee" is necessary and desirable, the proper recourse is for the Association members to vote to amend the Declaration and Bylaws to permit such a fee. Accordingly, the decision of the trial court is affirmed.

Affirmed.

Judges GREENE and WYNN concur.