I. Introduction
 

 On 5 January 2016, Gordon E. Boyce ("Plaintiff") filed a declaratory judgment action pursuant to
 
 N.C. Gen. Stat. § 1-254
 

 et seq.
 
 seeking a "declaration of the right, status or other relations" between Plaintiff and the North Carolina State Bar ("Defendant"). The trial court dismissed Plaintiff's request for declaratory judgment on two grounds: (1) Plaintiff lacks standing to bring this complaint under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, and therefore the court lacks subject matter jurisdiction; and (2) the complaint "presents no viable case or controversy" under Rule 12(b)(1) of the Rules of Civil Procedure. We reverse in part and affirm in part, as discussed herein.
 

 II. Factual and Procedural History
 

 Plaintiff filed a lengthy complaint outlining the history of defamation litigation between the Plaintiff, Roy Cooper and others. A brief summary of the context of this predicate litigation follows.
 

 The law firm of Boyce and Isley, PLLC, and its members G. Eugene Boyce, R. Daniel Boyce, Philip R. Isley and Laura B. Isley ("Plaintiffs") are the original Plaintiffs in this action.
 
 Boyce & Isley, PLLC v. Cooper,
 

 153 N.C. App. 25
 
 , 26-27,
 
 568 S.E.2d 893
 
 , 896 (2002) (hereinafter
 
 Boyce I
 
 ). On 2 November 2000, Plaintiffs filed a complaint with the State Board of Elections against Roy Cooper, III, the Democratic nominee for the Office of Attorney General of North Carolina, his campaign
 committee, and members of his campaign staff ("Defendants").
 
 Id.
 
 at 27,
 
 568 S.E.2d at 896
 
 . Plaintiffs' complaint alleged defendant's political advertisement violated
 
 N.C. Gen. Stat. § 163-274
 
 (8), which prohibits "any person to publish ... derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity[.]"
 
 N.C. Gen. Stat. § 163-274
 
 (8) (2001).
 

 Id.
 

 at 27
 
 ,
 
 568 S.E.2d at 896
 
 .
 

 During this action's pendency before the State Board of Elections, Plaintiffs filed a similar complaint against Defendants in Wake County Superior Court.
 
 Id.
 
 at 27,
 
 568 S.E.2d at 896
 
 . Here, Plaintiffs alleged Defendants published a false and fraudulent political television advertisement.
 
 Id.
 
 at 27,
 
 568 S.E.2d at 896
 
 . Plaintiffs alleged Defendants' advertisement defamed R. Daniel Boyce ("Dan Boyce"), the Republican nominee for the Office of Attorney General of North Carolina.
 
 Id.
 
 at 27,
 
 568 S.E.2d at 896
 
 . Plaintiffs also alleged Defendants' advertisement
 defamed the member attorneys of the Boyce & Isley law firm.
 
 Id.
 
 at 27,
 
 568 S.E.2d at 896
 
 . The audio portion of Defendants' advertisement stated:
 

 I'm Roy Cooper, candidate for Attorney General, and I sponsored this ad.
 

 ....
 

 Dan Boyce-his law firm sued the state, charging $28,000 an hour in lawyer fees to the taxpayers.
 

 The Judge said it shocks the conscience.
 

 Dan Boyce's law firm wanted more than a police officer's salary for each hour's work.
 

 Dan Boyce, wrong for Attorney General.
 

 Id.
 
 at 27,
 
 568 S.E.2d at 897
 
 .
 
 [1]
 

 Plaintiffs' complaint alleged the above-quoted advertisement was defamatory
 
 per se
 
 and constituted unfair and deceptive trade practices.
 
 Id
 
 . at 27,
 
 568 S.E.2d at 897
 
 . The complaint also alleged Defendants conspired to violate
 
 N.C. Gen. Stat. § 163-274
 
 (8).
 
 Id
 
 . at 27,
 
 568 S.E.2d at 897
 
 . Plaintiffs requested the trial court issue a declaratory judgment in regard to Defendants' alleged violation of
 
 N.C. Gen. Stat. § 163-274
 
 (8).
 

 Id.
 

 at 28
 
 ,
 
 568 S.E.2d at 897
 
 .
 

 The State Board of Elections dismissed Plaintiffs' complaint on 20 December 2000.
 
 Id
 
 . at 28,
 
 568 S.E.2d at 897
 
 . Defendants subsequently filed a motion requesting the trial court to dismiss Plaintiffs' complaint on all claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.
 
 Id.
 
 at 28,
 
 568 S.E.2d at 897
 
 . In an order filed 6 April 2001, Superior Court Judge James C. Spencer granted Defendants' motion to dismiss all claims.
 
 Id.
 
 at 26,
 
 568 S.E.2d at 896
 
 .
 

 Plaintiffs timely appealed to this Court, and this Court heard the action on 23 April 2002.
 
 Id.
 
 at 26,
 
 568 S.E.2d at 896
 
 . Plaintiffs contended the trial court erred in dismissing their claims for defamation,
 
 id.
 
 at 28,
 
 568 S.E.2d at 897
 
 , and unfair and deceptive trade practices.
 
 Id.
 
 at 35,
 
 568 S.E.2d at 901
 
 . On cross-appeal, Defendants contended the trial court erred in failing to take judicial notice of the Board of Elections's order
 dismissing Plaintiffs' complaint, and of various newspaper articles concerning the political campaign.
 
 Id.
 
 at 37,
 
 568 S.E.2d at 903
 
 . In an opinion filed on 17 September 2002, this Court concluded Plaintiffs' allegations of defamation and unfair and deceptive trade practices sufficiently stated a claim upon which relief could be granted.
 
 Id.
 
 at 39,
 
 568 S.E.2d at 904
 
 . This Court also concluded the political advertisement was defamatory
 
 per se.
 

 Id.
 
 at 32,
 
 568 S.E.2d at 899
 
 . Finally, this Court held the trial court erred in granting Defendants' Rule 12(b)(6) motion to dismiss and reversed the trial court's order.
 
 [2]
 

 Id.
 
 at 39,
 
 568 S.E.2d at 904
 
 .
 
 [3]
 

 On 27 November 2002, the North Carolina Supreme Court granted Defendants' motion for temporary stay "pending determination
 of Defendants' petitions for discretionary review."
 
 Boyce & Isley, PLLC v. Cooper
 
 ,
 
 356 N.C. 610
 
 ,
 
 574 S.E.2d 466
 
 (2002). On 1 May 2003, the North Carolina Supreme Court ordered the stay dissolved.
 
 Boyce & Isley, PLLC v. Cooper
 
 ,
 
 357 N.C. 163
 
 ,
 
 580 S.E.2d 361
 
 (2003). Also on 1 May 2003, the North Carolina Supreme Court denied Defendants' petition for "Writ of Supercedeas of the judgment of the Court of Appeals," and dismissed Defendants' appeal from this Court pursuant to N.C. Gen. Stat. § 7A-30 (constitutional question)
 
 ex mero motu
 
 .
 
 Id.
 
 at 163,
 
 580 S.E.2d at 361
 
 . Finally, on 1 May 2003, the North Carolina Supreme Court denied Defendants' alternative petition for discretionary review of "Constitutional Issues of the decision of the North Carolina Court of Appeals pursuant to G.S. 7A-31."
 
 [4]
 

 Defendants appealed to the Supreme Court of the United States, and on 20 October 2003, that Court denied Defendants' petition for writ of certiorari.
 
 Cooper v. Boyce
 
 ,
 
 540 U.S. 965
 
 ,
 
 124 S.Ct. 431
 
 ,
 
 157 L.Ed.2d 310
 
 (2003).
 

 On remand, Defendants answered Plaintiffs' complaint, raised constitutional defenses and moved for judgment on the pleadings under Rule 12(c) of the North Carolina Rules of Civil Procedure.
 
 Boyce and Isley, PLLC v. Cooper
 
 ,
 
 169 N.C. App. 572
 
 , 573,
 
 611 S.E.2d 175
 
 , 176 (2005) (hereinafter "
 
 Boyce II
 
 "). Chief Justice Lake of the North Carolina Supreme Court designated this action as exceptional, pursuant to Rule 2.1 of the General Rules of Practice.
 
 Id.
 
 at 573,
 
 611 S.E.2d at 176
 
 . Chief
 Justice Lake assigned Superior Court Judge John B. Lewis, Jr., ("Judge Lewis") to the action.
 
 Id.
 
 at 573,
 
 611 S.E.2d at 176
 
 . The trial court denied Defendants' motion for judgment on the pleadings on 22 September 2003.
 
 Id.
 
 at 573,
 
 611 S.E.2d at 176
 
 . Defendants appealed to this Court, and this Court heard the matter on 25 August 2004.
 
 Id.
 
 at 573,
 
 611 S.E.2d at 175
 
 .
 

 This Court concluded Defendants' appeal was interlocutory since the trial court's denial of Defendants' motion to dismiss the case did not constitute a final judgment.
 
 Id.
 
 at 574,
 
 611 S.E.2d at 176
 
 . This Court also determined Defendants failed to show how a substantial right would be lost if they did not immediately appeal the trial court's ruling.
 
 Id.
 
 at 578,
 
 611 S.E.2d at 179
 
 . This Court dismissed Defendants' interlocutory appeal.
 
 Id
 
 . at 578,
 
 611 S.E.2d at 179
 
 .
 
 [5]
 

 On 7 June 2011, Defendants filed a petition for discretionary review with the North Carolina Supreme Court. The North Carolina Supreme Court denied Defendants' petition on 9 November 2011.
 
 Boyce & Isley, PLLC v. Cooper
 
 ,
 
 365 N.C. 365
 
 ,
 
 718 S.E.2d 403
 
 (2011).
 
 [6]
 

 Following the establishment of the validity of the complaint, there were additional appeals regarding discovery matters and litigation issues which are reported in detail in the following cases which are not outlined herein but are cited so to note the nature of this litigation.
 
 [7]
 

 Fortunately for all concerned, after fourteen years of litigation, the parties settled this controversy. The current complaint for declaratory judgment alleges Defendant Cooper, as part of the settlement, admitted he made false assertions in the 2000 political advertisements. Plaintiff Gordon E. Boyce ("Plaintiff"), acting pursuant to Rule 8.3 of the North Carolina Rules of Professional Conduct, reported Cooper's unethical statements to Defendant North Carolina State Bar ("State Bar"). Specifically Plaintiff alleged Cooper violated Rule 4.1 and Rule 8.4 of the Rules of Professional Conduct. These Rules provide:
 

 Rule 4.1 Truthfulness in Statement to Others.
 

 In the course of representing a client a lawyer shall not knowingly make a false statement of material fact to a third person.
 

 Rule 8.4 Misconduct.
 

 It is professional misconduct for a lawyer to:
 

 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 

 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 

 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]
 

 When the State Bar failed to take public action on his complaints, Plaintiff filed a declaratory judgment action in Wake County Superior Court asking for three declarations:
 
 [8]
 

 (a) That concurrent jurisdiction of several types exists as to resolution of attorney discipline and misconduct matters, and
 

 (b) That Defendant The State Bar, by reason of its apparent Conflict of Interest has no right, jurisdiction or authority by recognition and knowledge of the clear conflict of interest and regarding the party and parties in question to ignore and appropriate Order of Referral, and
 

 (c) That Defendant The State Bar is obligated by law, by the Rules of Professional Conduct as a matter of conscience and good faith to refer Plaintiff's complaints and communications regarding the wrongful conduct of its own acting
 Counsel, Legal Representative to the Appropriate Forum and Jurisdiction for investigation, findings of fact and recommendations as to discipline, if any, as by law provided and so recognized, for cost[.]
 

 In response, the State Bar moved to dismiss on three grounds: (1) lack of standing; (2) declaratory judgment is a remedy limited to interpretation of "written instruments" and therefore lacks a viable controversy; and (3) settlement of the prior lawsuit acts as a bar to any of Plaintiff's claims. Following written responses, replies, and additional authorities from both parties, a hearing was held. Both parties were present and participated in the hearing. As a result, the trial court dismissed Plaintiff's case on two grounds: (1) Plaintiff lacks standing to bring this complaint under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure, and therefore the court lacks subject matter jurisdiction; and (2) the complaint "presents no viable case or controversy" under Rule 12(b)(1) of the Rules of Civil Procedure. Plaintiff timely appealed.
 

 III. Standard of Review
 

 As an initial matter we note neither party in their briefs suggested a standard of review for this Court to examine the issues raised below. "The standard of review of a judgment rendered under the declaratory judgment act is the same as in other cases."
 
 Miesch v. Ocean Dunes Homeowners Ass'n,
 

 120 N.C. App. 559
 
 , 562,
 
 464 S.E.2d 64
 
 , 67 (1995),
 
 disc. review denied
 
 ,
 
 342 N.C. 657
 
 ,
 
 467 S.E.2d 717
 
 (1996) ;
 
 see also
 

 N.C. Gen. Stat. § 1-258
 
 (2017) ("All orders, judgment and decrees under [Article 26, 'Declaratory Judgments,'] may be reviewed as other orders, judgments and decrees.").
 

 Thus, where a declaratory judgment action is heard without a jury and the trial court resolves issues of fact, the court's findings of fact are conclusive on appeal if supported by competent evidence in the record, even if there exists evidence to the contrary, and a judgment supported by such findings will be affirmed.
 

 Miesch
 
 at 562,
 
 464 S.E.2d at 67
 
 .
 

 "However, the trial court's conclusions of law are reviewable
 
 de novo.
 
 "
 

 Cross v. Cap. Transaction Grp.,
 

 191 N.C. App. 115
 
 , 117,
 
 661 S.E.2d 778
 
 , 780 (2008) (internal quotation marks omitted),
 
 disc. review denied
 
 ,
 
 363 N.C. 124
 
 ,
 
 672 S.E.2d 687
 
 (2009).
 

 IV. Analysis
 

 Under Article III, section 2 of the United States Constitution, federal courts are courts of limited jurisdiction. State courts, in contrast, are courts of general jurisdiction. Article IV, section 1 of the North Carolina Constitution provides, "[t]he Judicial Power of the State shall, except as provided in Section 3 of this Article, be vested in a Court for the Trial of Impeachments and in a General Court of Justice." Additionally:
 

 The General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created. Appeals from administrative agencies shall be to the General Courts of Justice.
 

 N.C. Const., Article IV, section 3 (2015). Matters which are justiciable under North Carolina state law are much broader than under federal law.
 
 Neuse River Foundation, Inc. v. Smithfield Foods, Inc.,
 

 155 N.C. App. 110
 
 , 114,
 
 574 S.E.2d 48
 
 , 52 (2002) ("North Carolina courts are not constrained by the 'case or controversy' requirement of Article III of the United States Constitution."),
 
 disc. rev. denied,
 

 356 N.C. 675
 
 ,
 
 577 S.E.2d 628
 
 (2003).
 

 Generally, the North Carolina Constitution grants standing on anyone who suffers harm. "All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law ...."
 
 Mangum v. Raleigh Bd. of Adjustment
 
 ,
 
 362 N.C. 640
 
 , 642,
 
 669 S.E.2d 279
 
 , 281-82 (2008) (quoting N.C. Const. art. I, § 18 ).
 

 The rationale of [the standing rule] is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. The gist of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.
 

 Id.
 
 at 642,
 
 669 S.E.2d at 282
 
 (quoting
 
 Stanley v. Dep't of Conservation & Dev.
 
 ,
 
 284 N.C. 15
 
 , 28,
 
 199 S.E.2d 641
 
 , 650 (1973) ) (internal quotation marks omitted). "[S]tanding relates not to the power of the court but to
 the right of the party to have the court adjudicate a particular dispute."
 
 Cherry v. Wiesner
 
 ,
 
 245 N.C. App. 339
 
 , 346,
 
 781 S.E.2d 871
 
 , 876 (2016). "It is not necessary that a party demonstrate that injury has already occurred, but a showing of 'immediate or threatened injury' will suffice for purposes of standing."
 
 Id.
 
 at 642-43,
 
 669 S.E.2d at 282
 
 (quoting
 
 River Birch Assocs. v. City of Raleigh
 
 ,
 
 326 N.C. 100
 
 , 129,
 
 388 S.E.2d 538
 
 , 555 (1990) ).
 

 Plaintiff's first allegation for declaratory relief requests the interpretation of a North Carolina statute regarding the availability of forums, in addition to that of the State Bar, for discipline of an attorney who has admitted he has been untruthful in litigation. Our law clearly provides for declaratory relief in the interpretation of state statutes.
 
 Goldston v. State
 
 ,
 
 361 N.C. 26
 
 , 33,
 
 637 S.E.2d 876
 
 , 881 (2006). The State Bar failed to address this issue in its motion to dismiss before the trial court and in its appellate briefing. The State Bar instead focused on the issues of standing and the justiciability of the court to review the actions of the State Bar in connection with a specifically filed grievance. We hold this Plaintiff has standing to bring an action seeking interpretation of the statutes on concurrent jurisdiction for a court to discipline attorneys' misconduct.
 

 The State Bar Association is an administrative agency created under Article IV, section 3 of the North Carolina Constitution. The agency was created for the express purpose of regulating the practice of law in this State.
 
 Cunningham v. Selman
 
 ,
 
 201 N.C. App. 270
 
 , 282,
 
 689 S.E.2d 517
 
 , 525 (2009). Its regulations have the force of law as to its members. 27 N.C. Admin. Code Chapter 2, 0.2. Its powers, however, are subject to review by way of appeal to the General Court
 of Justice under our State Constitution. N.C. Const. Art. IV, section 3 (2017). These powers are not exclusive.
 

 Our legislature, in creating the State Bar, required the Bar to be subject to the "inherent power" of the courts to regulate the legal profession.
 
 N.C. Gen. Stat. § 84-36
 
 (2016) provides, "Nothing contained in this Article shall be construed as disabling or abridging the inherent powers of the court to deal with its attorneys."
 

 Neither party contests Plaintiff is a member of the State Bar, by virtue of having earned a license to practice law and by virtue of paying annual dues to the State Bar. As a member of the State Bar, Plaintiff has the right to participate in its organization. Plaintiff also has a duty to comply with its Code of Professional Responsibility. Rule 8.2 of the Professional Code of Conduct mandates, "[a] lawyer shall not make
 a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, or other adjudicatory officer or of a candidate for election or appointment to judicial office." Additionally, under Rule 8.3(a) of the Revised Rules of Professional Conduct of the North Carolina State Bar:
 

 A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the North Carolina State Bar or the court having jurisdiction over the matter.
 

 As is clear from the statutes, the General Court of Justice in Wake County, in addition to the State Bar, had or has jurisdiction under its inherent powers to provide for any relief needed to address professional misconduct arising out of litigation before the courts.
 
 See
 

 Swenson v. Thibaut,
 

 39 N.C. App. 77
 
 ,
 
 250 S.E.2d 279
 
 (1978),
 
 cert. denied and appeal dismissed,
 

 296 N.C. 740
 
 ,
 
 254 S.E.2d 182
 
 (1979). We need not address whether Cooper has violated the Rules of Professional Conduct nor what, if any, discipline is appropriate, because he is not a party to this action and has not had a chance to defend himself against these charges of misconduct in a trial court.
 
 See
 

 In re Burton
 
 ,
 
 257 N.C. 534
 
 ,
 
 126 S.E.2d 581
 
 (1962) ;
 
 In re Northwestern Bonding Co.,
 

 16 N.C. App. 272
 
 ,
 
 192 S.E.2d 33
 
 ,
 
 cert. denied,
 

 282 N.C. 426
 
 ,
 
 192 S.E.2d 837
 
 (1972). Furthermore, Plaintiff did not ask the court to make a declaratory ruling on the question of Cooper's misconduct in his request for declaratory relief.
 
 See
 

 In re Paul,
 

 84 N.C. App. 491
 
 ,
 
 353 S.E.2d 254
 
 ,
 
 cert. denied,
 

 319 N.C. 673
 
 ,
 
 356 S.E.2d 779
 
 (1987). He asks only for an interpretation of the statutes under which he could seek relief.
 
 See
 

 State v. Spivey,
 

 213 N.C. 45
 
 ,
 
 195 S.E. 1
 
 (1938) ;
 
 Swenson v. Thibaut,
 

 39 N.C. App. 77
 
 ,
 
 250 S.E.2d 279
 
 (1978),
 
 cert. denied and appeal dismissed,
 

 296 N.C. 740
 
 ,
 
 254 S.E.2d 182
 
 (1979).
 

 In the trial court below, we note the State Bar pled the settlement of Plaintiff's private claim would act as a bar to disciplinary action for ethical misconduct. The court below wisely did not address this issue. Notwithstanding this result, the State Bar raises this same claim on appeal arguing to this Court the claim is moot because the matter has been fully settled. This argument lacks merit. We shall now address this issue so that the court below, on remand, will not have to revisit this issue.
 

 Professional misconduct in a litigation cannot be dependent upon the outcome of a litigation. Inaction by the State Bar or the courts during
 the course of the litigation, as the concurrence points out, cannot bar or moot subsequent discipline for professional misconduct. A lawyer's duty to the truth and his duty to advocate based upon the truth is central to our system of dispute resolution. N.C. R. Prof. Conduct 3.3. While any client, regardless of his or her status, is entitled to procedural defenses and due process in litigating a claim, no client is entitled to have his attorney present a claim or defense which is untruthful. N.C. R. Prof. Conduct 8.2. Both the public and our profession expect truthful claims and defenses to be presented in court, so that resolution of disputes can be meritoriously and promptly settled.
 

 Id.
 

 With regard to the Plaintiff's second and third requests for declaratory relief, we agree with the trial court Plaintiff lacks
 standing to bring these claims. The injury for which Boyce seeks declaratory relief is the State Bar's refusal to pursue disciplinary action against Cooper, allegedly due to the State Bar's conflict of interest. We thus address whether
 
 that
 
 purported injury is one legally cognizable in court.
 

 Unsurprisingly, Plaintiff is not the first attorney who has taken issue with a state bar's failure to act on a disciplinary grievance and then sought relief from the courts. From our review of the precedent addressing this issue, every jurisdiction that has ever confronted it has concluded that the complainant has not alleged an injury sufficient to confer standing.
 
 See, e.g.
 
 ,
 
 Lewis v. Slack
 
 ,
 
 110 Conn.App. 641
 
 ,
 
 955 A.2d 620
 
 , 625 (2008) ;
 
 Cole v. Owens
 
 ,
 
 766 So.2d 287
 
 , 288 (Fla. Dist. Ct. App. 2000) ;
 
 Scanlon v. State Bar of Georgia
 
 ,
 
 264 Ga. 251
 
 ,
 
 443 S.E.2d 830
 
 , 831 (1994) ;
 
 Akinaka v. Disciplinary Bd. of Hawai'i Supreme Court
 
 ,
 
 91 Hawai'i 51
 
 ,
 
 979 P.2d 1077
 
 , 1084-86 (1999) ;
 
 Woodard v. Kentucky Bar Ass'n
 
 ,
 
 156 S.W.3d 256
 
 , 257 (Ky. 2004) ;
 
 In re Request for an Investigation of an Attorney
 
 ,
 
 449 Mass. 1013
 
 ,
 
 867 N.E.2d 323
 
 , 324-25 (2007) ;
 
 Cotton v. Steele
 
 ,
 
 255 Neb. 892
 
 ,
 
 587 N.W.2d 693
 
 , 699 (1999) ;
 
 see also
 

 Matter of Appointment of Indep. Counsel
 
 ,
 
 766 F.2d 70
 
 , 73 (2d Cir. 1985) (holding that victim of an alleged crime had no standing to seek court appointment of independent counsel where prosecutors had a conflict of interest).
 

 For example, in
 
 Cotton v. Steele
 
 , the Supreme Court of Nebraska examined the standing of a complainant who alleged the Nebraska state bar and its disciplinary attorneys refused to properly investigate his bar grievance against a Nebraska attorney due to bias.
 
 587 N.W.2d at 699
 
 . That court concluded the complainant lacked standing because "the failure to discipline an attorney who should have been disciplined poses a risk of injury to the general public, not to a particular individual."
 
 Id
 
 . at 699. "Thus, when a citizen files a disciplinary complaint, there are two possible outcomes: either some form of discipline is assessed against
 the attorney or no discipline is assessed. Neither result confers any legally cognizable benefit or causes any legally cognizable injury to the complainant who initiated the proceeding."
 
 Id
 
 . at 699.
 

 We agree with the precedent from our sister states and hold the Plaintiff has not alleged a cognizable legal injury in this case. The State Bar disciplinary process is intended "to protect the public, the courts, and the legal profession."
 
 N.C. State Bar v. Rogers
 
 ,
 
 164 N.C. App. 648
 
 , 656,
 
 596 S.E.2d 337
 
 , 343 (2004). Under our State Bar's disciplinary procedures, the complainant has no control over when, how, or whether the State Bar pursues his grievance. After reporting the alleged attorney misconduct to the Bar, the complainant's interest in the case going forward is the same as all other members of the public-to see a state agency protect the public from attorney misconduct by pursuing discipline for unethical behavior. 27 N.C. Admin. Code 1B.0101
 
 et seq
 
 .
 

 This is not to propose the State Bar and its officers and investigators are immune from consequences when they ignore a conflict of interest. If those investigators act unethically in the performance of their obligations, they can-and should-face consequences either through executive branch agencies designed to police ethical misconduct, or through a process created by our General Assembly.
 
 [9]
 
 The mere fact state investigators have an ethical conflict in the performance of their duties does not confer on members of the public the necessary legal standing to bring the dispute directly to court through the Declaratory Judgment Act. To hold otherwise, there would be no reason why similarly situated people-including, importantly, victims of crimes-could not bring suit when they believed those handling their case had a conflict of interest. This runs counter to the long-standing principle that when our government investigates and prosecutes wrongdoers, it does so to vindicate public interests, not private ones.
 
 See
 

 Linda R.S. v. Richard D.,
 

 410 U.S. 614
 
 , 619,
 
 93 S.Ct. 1146
 
 , 1149,
 
 35 L.Ed.2d 536
 
 , 541 (1973). This, in turn, means those aggrieved by the alleged wrongdoing have no standing to ask the courts to intervene
 in government investigations or prosecutions.
 

 With these principles in mind, we join our fellow courts in holding a complainant in a state bar disciplinary proceeding lacks standing to ask the courts to intervene in an ethics investigation on the ground the investigators are biased or have a conflict of interest.
 

 We therefore affirm the decision of the trial court with regard to Plaintiff's second and third claims for relief as set forth in his complaint and reverse the decision of the trial court with regard to Plaintiff's first claim for relief and remand the matter to the trial court for further action consistent with this opinion.
 

 AFFIRMED IN PART AND REVERSED IN PART.
 

 Judge BRYANT concurs.
 

 Judge DIETZ concurs in a separate opinion.
 

 These lawsuits constituted a group of class action suits on behalf of "thousands of Plaintiffs alleging that taxes levied by the State were unconstitutional."
 
 Boyce & Isley, PLLC v. Cooper
 
 ,
 
 169 N.C. App. 572
 
 , 574,
 
 611 S.E.2d 175
 
 , 176 (2005). "Dan Boyce or members of [his] law firm allegedly served as [Plaintiffs'] counsel" in these actions.
 
 Id.
 
 at 574,
 
 611 S.E.2d at 176
 
 .
 

 This Court also concluded the trial court correctly declined to take judicial notice of the Board's determination Defendants did not violate
 
 N.C. Gen. Stat. § 163-274
 
 (8).
 

 Judge Timmons-Goodson wrote the opinion, with Judges Greene and McGee concurring.
 

 Chief Justice Lake and Justices Parker and Orr recused from the 1 May 2003 Supreme Court orders.
 

 Judge Hudson wrote the opinion, with Chief Judge Martin and Judge Elmore concurring.
 

 Chief Justice Parker and Justices Timmons-Goodson and Hudson recused.
 

 The case's third appeal concerned discovery issues.
 
 Boyce & Isley, PLLC v. Cooper,
 

 195 N.C. App. 625
 
 ,
 
 673 S.E.2d 694
 
 ,
 
 review denied
 
 ,
 
 363 N.C. 651
 
 ,
 
 686 S.E.2d 512
 
 (2009) ("
 
 Boyce III
 
 "). Following another remand, the case came to this Court a fourth time.
 
 Boyce & Isley, PLLC v. Cooper
 
 ,
 
 211 N.C. App. 469
 
 ,
 
 710 S.E.2d 309
 
 (2011),
 
 cert. denied,
 

 566 U.S. 987
 
 ,
 
 132 S.Ct. 2378
 
 ,
 
 182 L.Ed.2d 1018
 
 (2012) ("
 
 Boyce IV
 
 ").
 

 We note during oral argument in this matter the State Bar's counsel refused to answer the court's questions with regard to what, if any, action the Disciplinary Committee took with regard to Boyce's ethical complaint citing confidentiality of the proceedings. The State Bar's counsel did concede the Attorney General and its lawyers are subject to the Rules of Professional Responsibility. In disciplining lawyers for misconduct, some disciplinary measures are confidential and even if disciplined, a complaining party would not be able to discover what, if any, discipline the State Bar meted out.
 

 And, of course, these proceedings might make their way to the courts, if the law governing them permits judicial review. But that is not the path through which this case reached this Court.
 

 DIETZ, Judge, concurring.
 

 Who watches the watchmen? We have asked that question at least since the days of Greek and Roman philosophers.
 
 See
 
 Plato,
 
 Republic
 
 376c-376d; Juvenal,
 
 Satires
 
 6.347-48.
 

 Lawyers employed by the North Carolina State Bar are the watchmen when it comes to allegations of attorney conflicts of interest. In this declaratory judgment action, Boyce seeks an answer to a simple question: when the lawyers at the State Bar have a conflict of interest, who watches them?
 

 One answer, Boyce contends, lies in the concurrent jurisdiction of the court system to regulate lawyers. He argues that the statutes creating the State Bar reserved the inherent power of the courts to discipline lawyers. Thus, the courts retain the power to hear claims of attorney misconduct when the claimants have shown that the Bar has a potential conflict of interest. I agree with the majority that this particular declaratory judgment claim (but not the other claims asserted by Boyce) involves a justiciable legal controversy between these parties that the courts may answer through the Declaratory Judgment Act.
 

 It is worth emphasizing that Boyce has alleged a credible conflict of interest in this case. At the time Boyce submitted his grievance
 
 [10]
 
 and was awaiting an investigation by the State Bar, Cooper, then serving as our State's Attorney General, was representing the Bar in perhaps the highest profile legal issue in State Bar history-a lawsuit by LegalZoom
 that threatened to upend the Bar's core mission of licensing and regulating the practice of law in our State.
 
 See
 

 LegalZoom.com, Inc. v. North Carolina State Bar
 
 , No. 11 CVS 15111,
 
 2015 WL 6441853
 
 (N.C. Super. Ct. 2015).
 

 Cooper appeared in that case as recently as October 2015, a time period that, according to Boyce, overlapped with the submission of his grievance. Moreover, during that same time period, Cooper and his staff routinely represented the State Bar or the Bar's Disciplinary Hearing Commission.
 
 See, e.g., Peggs v. North Carolina State Bar
 
 , TA-25890 (N.C. Indus. Comm'n 2017);
 
 Harper v. North Carolina State Bar
 
 , TA-25285 (N.C. Indus. Comm'n 2016);
 
 Sutton v. North Carolina State Bar
 
 , No. 5:14-CV-243 (E.D.N.C. 2014).
 

 One does not need to be a lawyer (and certainly not a State Bar lawyer trained to investigate conflicts of interest) to recognize that the State Bar itself has a potential conflict of interest when it is asked to investigate a lawyer who is actively representing the Bar in high-profile litigation, and who may possess confidential information about the Bar and its handling of past attorney discipline investigations.
 

 Moreover, as the majority observes, before the General Assembly created the State Bar, the judicial branch handled lawyer discipline directly through its inherent authority to regulate the lawyers who appear before the courts. When the General Assembly created the State Bar, it emphasized in the enabling
 statutes that the Bar disciplinary process shall not be "construed as disabling or abridging the inherent powers of the court to deal with its attorneys."
 
 N.C. Gen. Stat. § 84-36
 
 .
 

 Indeed, the State Bar has conceded that the courts' inherent authority to discipline lawyers-even for conduct not occurring in a pending court proceeding-survived the creation of the Bar's disciplinary procedures. Several years ago, the Bar received a disciplinary complaint against one of Cooper's employees at the Attorney General's office.
 
 In re Hicks
 
 , 14 M 4670 (N.C. Super. Ct. Sept. 12, 2014). That employee had represented the State Bar and the Bar's Disciplinary Hearing Commission in past legal proceedings.
 

 Id.
 

 Because of the potential conflict of interest, the Bar referred that matter to the State Bar of Georgia for investigation.
 

 Id.
 

 After the Georgia ethics investigators found probable cause to pursue discipline, the State Bar then referred the matter to Wake County Superior Court, which appointed a Wake County assistant district attorney to represent the State as "prosecuting counsel."
 

 Id.
 

 The court's order imposing discipline in that case expressly states that "[t]his matter is before the Court upon a referral from the North Carolina State Bar requesting that this court
 exercise its inherent authority and concurrent jurisdiction over a grievance."
 

 Id.
 

 In sum, there is a justiciable legal controversy concerning the scope of the concurrent jurisdiction of the court system over attorney disciplinary proceedings and the ability of complainants to bypass the State Bar process when they believe the Bar has a conflict of interest. Boyce has standing to seek declaratory relief on this issue from the trial court. I therefore concur in the decision to reverse the trial court's dismissal of this claim for lack of standing and to remand for further proceedings.
 

 At oral argument, the State Bar refused to disclose precisely when it opened a grievance investigation or what steps it took with respect to Boyce's grievance. In its briefing, the Bar asserted only that the grievance exists and that, when Boyce inquired about it, the Bar gave him "a response he did not like."